# SUPREME COURT OF TEXAS.

## TYLER TERM, 1881.

### T. S. ROGERS v. LEON & H. BLUM.

#### (Case No. 1090.)

1. INDORSER — VENDOR'S LIEN. — B. sold real estate, giving bond for title, and taking mortgages on other property to secure payment of purchase money notes. The purchaser sold the property, and indorsed the purchase money notes given to him to one who sued him as indorser. Prior to bringing suit the plaintiff had intervened in another suit brought by the holder of the notes given to B. for the property, and consented to judgment establishing the priority of B.'s lien, and that the property sold should be first subjected to the payment of B.'s notes before subjecting the other mortgaged property. In the subsequent suit against the purchaser from B., as indorser of the notes executed to him, *held,*

   (1) The defendant was not released from liability by plaintiff's failure to enforce the vendor's lien resulting from the second sale as the superior lien on the property.

   (2) The title not having passed from B., his vendor's lien existed notwithstanding the mortgage on other property, and continued until the purchase money was paid, or foreclosure and sale. It was the superior lien on the property, and continued until payment.

   (3) In default of payment, B. could repossess the property or sell it to another.

   (4) When a contract for the sale of land is executory, the same presumption that a lien for purchase money is waived by taking other security does not exist which obtains when the title has passed.

2. MARSHALING SECURITIES. — To authorize the marshaling of securities by one creditor for the protection of another, it must appear that the securities belong to a common debtor.

APPEAL from Hopkins.    Tried below before the Hon. Green J. Clark.

Suit filed on the 2d day of July, 1879, by appellees against appellant T. S. Rogers, as indorser of a promissory note for $2,000, executed by V. M. Kelly to T. S. Rogers, and indorsed by the latter to appellees. Judgment against the estate of V. M. Kelly had been previously rendered.    This last suit was delayed in its progress by the deaths of defendants V. M. Kelly and J. S. Kelly, and the necessity of making their representatives parties.    The judgment was against V. M. Kelly's estate for the amount of debt and costs, and subjecting one-third of the mill property for which the note was given to a vendor's lien, subject to a prior lien· held by Eli Moore and by Reynolds & O'Neal.

Soon after the filing of suit by Leon & H. Blum against V. M. Kelly and J. S. Kelly, Eli Moore and Reynolds & O'Neal filed suits against V. M. Kelly et al. upon notes executed by V. M. Kelly to Graham and Taylor for the original purchase money of the mill property, and to foreclose the lien upon the same, and to foreclose mortgages given on other property than the mill property by V. M. Kelly and Mrs. Fuller to secure said notes.

In these two suits Leon & H. Blum intervened, admitting that the Graham and Taylor notes were a prior lien upon the mill property, but asking that Moore and Reynolds & O'Neal be required to exhaust other mortgaged property before subjecting the mill property to their debts.    These suits were settled by agreed judgments, and the mill property subjected first to the debts of Moore and Reynolds & O'Neal, and then one-third of the surplus to the Rogers note.

The appellant in the present case set up the defense that appellees, by agreeing that the Moore and Reynolds & O'Neal debts should have a prior lien on the mill property, had discharged him from all liability as indorser.

*Tignal W. Jones,* for appellant.

I. Graham and Taylor, the vendors of the lot and machinery in the town of Sulphur Springs, known as the mill property, to V. M. Kelly, under whom Eli Moore and Reynolds & O'Neal claim, waived their vendor's lien on the same for the payment of the purchase money by taking at the time of the sale a distinct and independent security, and it not appearing that they reposed as well on their vendor's lien as upon such security. See Parker County *v.* Sewell, 24 Tex., 238; Wasson *v.* Davis, 34 Tex., 159, and Faver *v.* Robinson, 46 Tex., 204.

II. The note indorsed by defendant T. S. Rogers to plaintiffs Leon & H. Blum, and on which defendant is sued in this action, was secured by the vendor's lien on the undivided one-half of the lot and machinery in Sulphur Springs, Hopkins county, Texas, known as the mill property, and this was the only lien thereon; that the undivided half interest in said property was amply sufficient, if it had been sold for that purpose, to have paid off and satisfied the debt of $2,000 on which defendant was sued, and the interest thereon.

III. The defendant in this suit, T. S. Rogers, was discharged from all liability as indorser of the note sued on by the laches of plaintiffs Leon & H. Blum in prosecuting their suit on the note, and to foreclose their vendor's lien on the mill property, and to set aside the conveyance of the same by V. M. Kelly to John S. Kelly, and by agreeing with Eli Moore and Reynolds & O'Neal, the other creditors of V. M. Kelly, that they should foreclose their pretended vendor's lien upon the mill property, and after satisfying their judgments in full, if there was any surplus, one-third thereof should be applied to the judgment of plaintiffs on the note indorsed by defendant to them against V. M. Kelly and John S. Kelly, and on which defendant is sued in this action. Burke *v.* Cruger, 8 Tex., 66; De Colyar on Guarantees and Principal and

Surety, p. 438.   See also the authorities referred to by same author on page 411 in the note marked *.

IV. The defendant was discharged as indorser by the fact that, although the plaintiffs brought their suit to the proper term of the court against V. M. Kelly and John S. Kelly, at the instance and request of defendant, and although defendant agreed that his liability as indorser should continue if they did so, that plaintiffs did not prosecute their suit to judgment and execution.

V. The rights and remedies provided for sureties by the statute laws of Texas are also extended by the same laws to indorsers.   R. S., art. 3668.

*Geo. T. Todd*, also for appellant.

I. No vendor's lien attaches as an incident to an executory sale, evidenced by a simple note and a bond for title. McDonough *v.* Cross, 40 Tex., 253, 286; Flanagan *v.* Cushman, 50 Tex., 395; S. C., 48 Tex., 244; Irwin *v.* Garner, 50 Tex., 55–6; Brown *v.* Gilman, 4 Wheat., 46; 4 Kent Com., marg. pp. 153–4.

II. When the vendor elects, as he can do, not to rescind the sale, but to enforce the contract, and tenders deed, passing the full legal title, then the implied equitable vendor's lien springs for the first time in this sale.   Todd *et al. v.* Caldwell *et al.*, 10 Tex., 236; 4 Kent Com., marg. pp. 153–4, and authorities under first proposition above.

III. Appellant has all the rights of a surety under the facts.   R. S., arts. 268 and 3660–8; Burke *et al. v.* Cruger *et al.*, 8 Tex., 67; Claiborn *v.* Birge, 42 Tex., 98–102; Yeary *v.* Smith, 45 Tex., 57–71; Story on Bills, § 120; 1 Story Eq. Jur., § 325 *et seq.;* Story on Cont., § 868; 1 Par. Notes and Bills, pp. 236–9.   From these authorities appellant submits a final proposition, to wit:

IV. A compromise which affected injuriously, if it did not waive, the rights, equities and securities attaching to the contract, and which would inure to the indorser on

paying the note, made without the knowledge and consent of such indorser, will work his full discharge; and under this I submit that appellant is discharged and should have been so adjudged.

*Hunter & Putman*, for appellees.

I. The vendors, Graham and Taylor, did not waive their lien upon the lot and mill by taking mortgages on other property, as it does appear from the transaction that they relied also upon the property sold.

II. The note sued on by appellees does not purport to be a lien on any portion of the mill property, nor was there evidence sufficient to establish the fact that it was given in consideration of any portion of or interest in said property.

III. In appellant's pleadings there is no complaint of laches on part of appellees except agreeing to a judgment by which appellant's alleged lien was postponed to that of the Graham and Taylor notes.

IV. If it be held that the Graham and Taylor notes were not a prior incumbrance on the mill property, the postponing appellant's lien on one-third of the same would not release him as indorser, if it is clearly shown that such postponement worked him no injury. He is discharged only to the extent he would be injured if held bound.

STAYTON, ASSOCIATE JUSTICE.— The appellant has no legal ground to claim that he was released from his liability as indorser of the promissory note sued upon by the failure of the appellees to enforce the vendor's lien which arose upon the sale of the "mill property" by J. S. Kelly and himself to V. M. Kelly, as a superior lien to that held by the holders of the promissory notes executed by V. M. Kelly to Graham and Taylor for the purchase money of said property.

Notwithstanding Graham and Taylor took other security than the "mill property" for the payment of the purchase money therefor, the title to said property did not pass out of them by the execution of the bond to make title upon payment of the purchase money.

Until the purchase money was paid, or the property sold under some proceeding to be instituted by them, or some person to whom they transferred the notes, the title continued in them; and in default of payment they might have repossessed the property, or have sold it to some other person.

It may be held that Graham and Taylor cut off their right to rescind the executory contract made between them and V. M. Kelly, by transferring to third persons the promissory notes given to secure the balance of the purchase money; but if so, the lien upon the land passed with the notes to secure their payment, and this lien was not impaired by the fact that the notes were secured by other security than the lien upon the property for which they were given, but continued until the purchase money is paid or foreclosure is had upon the purchase money notes, and sale is made thereunder.

In cases of sales of land by executory contract, as in this case, the same rule as to presumption of release of lien by taking other security for the purchase money does not exist as it does in cases where the title passes by executed contract.

The lien held by the holders of the promissory notes executed to Graham and Taylor, being the older, is superior to the lien arising upon the sale of the same land afterwards made by J S. Kelly and the appellant to V. M. Kelly, and must prevail.

No injury resulted to appellant by the agreement made between the appellees and the holders of the notes made to Graham and Taylor; for the judgments rendered thereunder were the same as should have been rendered if no

agreement had been made, except that the judgments should have subjected one-half of the proceeds of the sale under foreclosure, after paying the judgments rendered in favor of the holders of the notes executed to Graham and Taylor, to the satisfaction of the judgment rendered in favor of appellees, instead of one-third of such excess; but this error did not operate to the injury of the appellant; for the property when sold did not sell for enough to satisfy the judgments rendered on the notes executed to Graham and Taylor.

It is claimed that the appellant was injured by the failure of the appellees to compel the holders of the notes executed to Graham and Taylor to cause the same to be satisfied out of the lands upon which V. M. Kelly and Mrs. Fuller executed mortgages before resorting to the property sold by Graham and Taylor to V. M. Kelly, and that for that reason the appellant's liability as indorser ceased.

This position we believe untenable. While it is true that Graham and Taylor executed a title bond to V. M. Kelly, by which they bound themselves to make title to him to the "mill property" upon payment of the purchase money, yet it clearly appears from the record that that purchase was made by V. M. Kelly in trust for the firm of J. S. Kelly & Co., which was composed of J. S. Kelly and the appellant. The appellant in his own testimony stated that J. S. Kelly & Co. made the cash payment of $1,000 made to Graham and Taylor at the time they executed the bond for title to V. M. Kelly, and that "the property was purchased by J. S. Kelly & Co., but for sufficient reasons to ourselves the property was taken in the name of V. M. Kelly, and the bond for title executed by Graham and Taylor to him; but V. M. Kelly had no interest in the property until afterwards, when J. S. Kelly & Co. sold to him, about the time J. S. Kelly & Co. dissolved."

The note sued upon in this cause was executed to the appellant for his share of the "mill property" conveyed to V. M. Kelly by J. S. Kelly and the appellant by conveyance last referred to in his testimony above.

Under these facts the appellant was not in a position to call upon a court of equity to marshal the securities given to secure the notes made to Graham and Taylor, neither against V. M. Kelly, Mrs. Fuller, nor the appellees.

To authorize the marshaling of securities held by one creditor for the protection of another, it must appear that the securities belong to a common debtor. Story's Equity, 634, 642, 643.

In this cause, under the facts, J. S. Kelly and the appellant must be held in equity, for the purposes now under consideration, to be the real debtors to those persons who hold the notes executed by V. M. Kelly to Graham and Taylor, in the original purchase of the "mill property;" and that V. M. Kelly and Mrs. Fuller, to the extent of the mortgages executed by them to Graham and Taylor, must be held, for the purposes of this inquiry, to be simply sureties for J. S. Kelly and appellant.

In the note sued upon in this cause V. M. Kelly is the original debtor, and he became so by executing the note sued upon to the appellant for the same property formerly bought by J. S. Kelly and the appellant from Graham and Taylor, and for which neither J. S. Kelly, nor the appellant, had ever paid.

From this it follows that, as between the appellant and the holders of the notes executed to Graham and Taylor, no equitable ground can be found to subject the property of V. M. Kelly or Mrs. Fuller first to the payment of debts which the appellant is equitably and morally bound himself to pay.

The proposition contended for by the appellant becomes the more glaringly unsound when we consider the rights of V. M. Kelly and Mrs. Fuller, who, under the facts, can

only be considered as sureties for the appellant to the ex-
tent of the mortgages executed by them respectively. It
was the right of those persons to have the property pur-
chased from Graham and Taylor first subjected to the
payment of the purchase money therefor, before resort
could be had to the property mortgaged by them.

The judgment of the district court is affirmed.

AFFIRMED.

[Opinion delivered November 22, 1881.]