## A. D. LaMoyne v. The State.

### No. 4291. Decided March 11, 1908.

**1.—Swindling—Offense Defined—Statutes Construed—Value.**

Under articles 944, 946 and 949 Penal Code, it is not necessary in order to constitute the offense of swindling that any benefit shall accrue to the person guilty of the fraud, or that any injury shall result to the person intended to be defrauded; and the grade of the offense must be fixed by the

value of the property the possession of which is yielded up on such fraudulent representation at the time such representations were made.

**2.—Same—Charge of Court—Felony—Misdemeanor.**

In a prosecution for swindling where the evidence showed that defendant's representations with regard to the property upon which he obtained a lien in consideration for some machinery of the value of about $250, were false, and relied upon at the time by the person selling said machinery, the fact that the injured party did not suffer a loss of over $50 by the transaction, did not reduce the offense to a misdemeanor, if by means of false and deceitful pretences on the part of the defendant the injured party was induced thereby at the time they were made to part with $250 of property; however, the court's charge on misdemeanor inuring to the benefit of the defendant he could not complain.

**3.—Same—Marshaling Securities.**

Upon trial for swindling where the evidence showed that defendant had falsely represented the condition of his property upon which he obtained a lien in consideration of certain machinery of the value of $250, and that at the time of obtaining such lien other liens to other parties existed upon said property, the question as to whether the party from whom said machinery was obtained could have secured himself subsequently out of other property owned by the defendant after marshalling defendant's various liens which he had given on said property could not be considered as a defense, and a charge thereon was correctly refused. Overruling Gaskins v. State, 38 S. W. Rep., 470; Perry v. State, 39 Texas Crim. Rep., 495; Lively v. State, 74 S. W. Rep., 321. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Navarro. Tried below before the Hon. L. B. Cobb.

Appeal from a conviction of swindling; penalty, thirty days confinement in the county jail.

The opinion states the case.

*W. W. Ballew*, for appellant.—On question of value of property sought to be acquired: Cases cited in opinion.

The court erred in refusing to give the special instruction requested by the defendant, to the effect, that Drane & Company had the right to require Mrs. Richmond and the People's National Bank to marshal their securities, and to make their indebtedness out of other securities held by them, before resorting to their securities upon the hay mortgaged to Drane & Company; and that if the security given by LaMoyne to Drane & Company, was of greater value than the hay-press he bought from Drane & Company, that the jury should acquit defendant. Willis v. Holland, 36 S. W. Rep., 329; Rogers v. Blum, 56 Texas, 1; Brown v. Thompson, 79 Texas, 58; Henkel v. Bohenke, 26 S. W. Rep., 645; Wohrmund v. The Edgewood Distilling Co., 32 S. W. Rep., 228.

The title to property must pass from the injured party to the accused. This is an essential element to be alleged and proven in the indictment and by the evidence. (State v. Vickery, 19 Texas, 326; Cline v. State, 43 Texas, 494; May v. State, 15 Texas Crim. App., 430.) The title to the property must pass from the party injured to the party accused. (Sims v. the State, 28 Texas Crim. App., 447.) The grade of the offense whether felony or misdemeanor must be determined by the value of the property fraudulently acquired. (Article

949, Penal Code.)   The acquisition of the property must be alleged and proven or there can be no swindle.   (Article 943.)   In addition to the acquisition of the property, the party acquiring the same, must do so with the intent to appropriate to his own use, and the intent to appropriate is also one of the essential elements of swindling and the indictment must so allege and the State must so prove.   (Stringer v. the State, 13 Texas Crim. App., 520.)   The ownership of the property must be correctly alleged, and the title thereto, must pass from the owner, to the party seeking to acquire it or there can be no swindle. The indictment must allege and the proof must show that the injured party, was induced to part, not .only with the possession, but also· with the title to his property, and the State must prove these facts; that is, that the accused acquired, first, possession; second, title to property of certain value.   (Curtis v. State, 31 Texas Crim. Rep., 39; Pitts v. State, 5 Texas Crim. App., 122; Cline v. State, 43 Texas, 494.)   The value of the property acquired must be alleged the same as in theft. (Ellison v. State, 25 Texas Crim. App., 328; Radford v. State, 35 Texas, 15; Boyle v. State, 37 Texas, 359; White v. State, 33 Texas Crim. Rep., 94.)   Everything that is necessary to· be alleged in the indictment must be proven, and the charge of the court in submitting article 946, of the statute, would authorize the conviction of a person upon a mere design or intent to swindle, without the acquisition of, or possession, or title to property, and without any injury to the other party, or benefit to the accused.   A person, under the facts alleged in this indictment, cannot be tried solely upon an intention to commit a swindle, but must commit an actual swindle; that is, before he can be adjudged guilty, he must have defrauded a party to whom he makes false representations, out of money, or property of some value; that is, he must have acquired property of some value, both the possession of, and the title to the same, from the possession and the ownership of the party relying on the false representations.   This proposition is clearly established, and is now the settled law of Texas, by Lively v. State, 74 S. W. Rep., 321; Gaskins v. State, 38 S. W. Rep., 470; Perry v. State, 39 Texas Crim. Rep., 495; 46 S. W. Rep., 816. We submit that this case should be reversed and remanded.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of swindling, and his punishment assessed at thirty days confinement in the county jail.

The indictment in the case contained three counts, the first for swindling, and the second and third for disposing of mortgaged property. The evidence shows that the appellant gave Drane & Co. a mortgage upon a hay-press and lifting-jack, worth $250, and mower and rake worth $75, and upon hay, which, the evidence showed was 100 tons, worth $5 per ton.   At the time of the execution of said mortgage, appellant

stated to Drane & Co., that there was no prior lien upon said property. but the facts show there was a lien in favor of the bank for about $200; and Mrs. Richmond, the owner of the land upon which the hay was growing, for about the same amount; that Drane & Co. did not part with their property except upon the statement that appellant owned the farm and the hay, appellant stating at the time that he not only owned the farm, but that all of same was unincumbered, including the hay and other personal property mortgaged. The facts show as stated this was false. The evidence in this case shows nothing in the world but a plain act of swindling, and a swindling for an amount over the value of $50. The fact that the prosecuting witness, who represented Drane & Co., got the property back from the appellant, and sold same to a third party for $225, was no reason whatever for charging the jury that, if appellant swindled Drane & Co. out of less than $50 it would be a misdemeanor. The learned trial judge seems to have labored under the impression that the fact that the prosecuting witness did not suffer a financial loss of over $50 by the transaction, it would not be a felony. This is not the law. If prosecuting witness by means of false and deceitful pretenses on the part of appellant was induced thereby to part with $250 worth of property the fact that the same was subsequently secured and most of the value of the property obtained, would not be any character or kind of legal defense to the prosecution, and in fact would not be legitimate evidence to be introduced in the trial of the case. It follows, therefore, that the court erred in charging upon misdemeanor theft in favor of appellant, but it is a matter of which appellant cannot complain, since although the evidence conclusively shows that the swindling was for an amount over fifty dollars, and the jury convicted for a misdemeanor swindle: This would not be a reason, according to the statute of this State for a new trial, since appellant was convicted of a less grade of offense than he was charged with. It follows from the above that the court did not err in refusing to give the special charge requested by appellant to the effect that Drane & Co. had the right to compel Mrs. Richmond and the People's National Bank to marshal their securities and to make their indebtedness out of the other security held by them, before resorting to their security upon the hay grown upon the Richmond farm, and that the security given by LaMoyne to Drane & Co., was of greater value than the hay-press he bought from Drane &. Co. This is not the law. This question is thoroughly settled by the statute, itself. Article 946 of the Penal Code is, as follows: "It is not necessary, in order to constitute the offense of swindling that any benefit shall accrue to the person guilty of the fraud or deceit, nor that any injury shall result to the persons intended to be defrauded, if it is sufficiently apparent that there was a willful design to receive benefit or cause an injury."

The indictment in this case is in proper and legal form, and the

other questions raised by appellant, in view of the foregoing we do not deem necessary to discuss.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### June 17, 1908.

RAMSEY, JUDGE.—This case was affirmed at the Dallas term and now comes before us on motion for rehearing. The original opinion in the case was delivered by Judge Brooks. In view of the fact that the question involved in the motion for rehearing has been presented for the first time since the accession of the writer to a position on this court, and in view of the fact of the difference between the other members of the court, as reflected and evidenced by the dissent of Judge Brooks in the case of Lively v. State, 74 S. W. Rep., 321, the preparation of the opinion on this motion, has devolved upon the writer. I think the motion for rehearing should be overruled and that the conclusion reached in the original opinion is correct.

There is some complaint that the original opinion does not state the case accurately as to some of its details. The statement is not as full as it probably might have been and is not entirely correct in its recital of some amounts and dates, but there is no such inaccuracy contained in it as could in any event have changed or affected the conclusion arrived at. The record shows that one J. M. Hoskins was vice president of Drane & Co. and that appellant came to him in August, 1905, and represented to him that he lived on his own farm near Rice in Navarro County, Texas, which consisted of two hundred and twenty acres of land; that one hundred acres of this land was in hay meadow on which was growing very fine hay and of sufficient value to pay for the press which he then desired to buy; that said hay was matured and ready to cut. According to the testimony of this witness, appellant represented that there was no lien or mortgage on the hay and proposed that he would give a mortgage upon the hay for the property he desired to buy. Hoskins testified that he believed that appellant owned the place as represented and that he relied upon the truthfulness of the other statements made by him; that in selling the hay-press in question he took a note and mortgage upon the property described therein and let appellant have the hay-press and lifting-jack. The mortgage also included a McCormick mower and rake and, among other things, contained this statement: "Also all earnings of my haying outfit, including my own hay, I have about 100 acres of my own meadow to put up, there is no prior lien on my own earnings or own hay. This lien on earnings is to run from season to season until this obligation is paid." The hay-press and lifting-jack were sold for $250. The testimony showed that it cost Drane & Co. $200 with freight. It was shown that the McCormick mower and rake was worth at retail $75 and at wholesale $59. The witness Warren testified that the hay was

worth $5.50 per ton. The appellant testified that it was worth $8 per ton. It was shown that the People's National Bank held a mortgage for the sum of $316.15 upon three head of horses, nine head of cattle and the entire crop of appellant and that of his tenant Warren, upon a wagon and all other farming tools and implements owned by appellant and also a mortgage upon the hay. The testimony shows that Mrs. Richmond who owned the land which appellant was farming had a mortgage upon all of his crop consisting of forty acres of cotton and twenty acres of corn; and all hay to be raised upon the Richmond farm, upon five head of cattle and two head of horses to secure her rent of $200. Of this amount it appeared that $100 had been paid before the mortgage on the hay was executed to Drane & Co. The appellant insists that the opinion of the court on the original submission is at variance with and directly opposed to the opinions of this court in the case of Gaskins v. State, 38 S. W. Rep., 470; Perry v. State, 39 Texas Crim. Rep., 495; 46 S. W. Rep., 816, and Lively v. State, 74 S. W. Rep., 321, and we are in terms asked to either grant the motion for rehearing upon the authority of the cases above cited or to overrule these cases in order, as stated, "that the legal profession as well as the citizens of the State, will not be misled thereby." There can be no sort of doubt that the decision of this case is directly opposed to and at variance with the decisions and rulings of this court in the cases cited above, and appellant's counsel is clearly right in his contention that if we are to follow the cases cited that it must of necessity result in a reversal of his cause. We do not believe, however, that the cases cited are correct, nor do we believe they should be followed. On the other hand we believe that both the reasoning and conclusion of these cases are unsound and that the result is vicious and that they should be set aside and both the profession and the people of Texas advised that a different rule has been ordained in this State. The first of the cases in point of time was that of Gaskins v. State, 38 S. W. Rep., 470. In that case appellant was charged with obtaining a horse, from one James Mitchell, of the value of $50. The proof there showed that Gaskins represented to Mitchell, the owner of the horse, that same was lost; that Mitchell, relying on such representation, was induced to part with said horse, or the chance thereof, for $15, which Gaskins paid him; that in truth the horse was not lost but was at the time in Gaskins' possession and that the evidence showed he was worth all the way from $15 to $35. In the charge of the court, the jury were instructed as to a felony and a misdemeanor and they were told that if they found that defendant procured the horse by means of swindling, and that the value of the horse was $20 or over, to find defendant guilty of felony. In this state of the proof counsel for Gaskins requested the court to charge the jury as follows: "Before the jury can convict of a felony in this case, they must find, beyond a reasonable doubt, that the horse was worth $20 over and above the $15 paid for him by the defendant. Therefore, if the jury have a reasonable doubt as to whether the horse is worth

that amount, they cannot convict the defendant of a felony." In the majority opinion by Judge Henderson it was held that this charge should have been given and the case was reversed on this ground. Judge Hurt dissented from this opinion and on this branch of the case said: "To be a felony the property obtained (the horse in this case) must be of the value of at least $20. Appellant gave to the owner $15 for the horse. The evidence is conflicting with regard to the value of the horse. Some of the witnesses swore that he was worth $35; others swore that he was not worth $20. Under this state of case appellant assumes two positions: First. That if the $15 be deducted from the $35, $20 would remain; but that, if the horse was not worth $35, then less than $20 would remain, the amount really obtained in value from the prosecutor. Second. That the horse was not worth more than $15, and that there was no swindle. Replying to the last position we have to say that there was a conflict in the evidence, as above stated. To the first, we reply that if the horse was worth $20 or over, the $15 paid for him cannot be deducted therefrom. The $15 paid was in connection with the false pretenses and devices, a part of the means used to accomplish the swindle. See Penal Code 1879, article 793. The value of the property acquired is the test. If the horse was worth $20, it was a felony." We think Judge Hurt correctly states the rule when he says, "the value of the property acquired is the test." The next case is Perry v. State, 39 Texas Crim. Rep., 495. The court, when this case was decided, was composed of the same judges who decided the Gaskins case, supra. There is no note of any dissent in that case, but we presume that Judge Hurt having dissented in the Gaskins case, had felt that the question had been decided by the court and that his dissent was unnecessary and would in any event be unavailing. It is sufficient to say that the Perry case, in terms, approved and reaffirmed the doctrine laid down in the Gaskins case above referred to. The remaining case cited is that of Lively v. State, 74 S. W. Rep., 321. On original submission the judgment of conviction in that case was affirmed. On rehearing, however, it was reversed and remanded on the authority of the cases above referred to. In the opinion on motion for rehearing the following statement appears: "Appellant in his motion contends that the court did not consider his first and seventh assignments of error, which call in question the action of the trial court refusing to give his special requested instruction to the effect that if appellant owned one bay horse, and gave a mortgage on that horse and buggy and harness to secure the purchase price of the buggy and harness, said buggy and harness and horse being of equal value or sufficient to pay the $82.50 for the buggy and harness, then defendant could not be convicted, although he may have misrepresented to the prosecutors that he owned another horse and also a crop of cotton, on which he gave a mortgage at the same time." It appears in that case that the buggy and harness were of the value of $82.50. It is stated that the least value placed on the horse received from the appellant by prosecutor was $30 as testified to by them; that

the sellers received from $90 to $112.50 worth of property in consideration of his debt of $82.50 and while appellant did not own the other horse or any cotton crop, in fact, the prosecutors were not swindled out of any value. Judge Henderson concludes his opinion in that case with the following language: "Certainly, under the facts of this case, the special instruction or a charge similar thereto should have been given. We do not understand that in a case of this character, appellant is tried solely on his intention to commit a swindle; that is, before he can be adjudged guilty, he must have defrauded a party to whom he makes false representations out of money or property of some value." The dissent of Judge Brooks in this case is noted in the reports. In order to present our views clearly on this question, we desire to review some of the articles of our Penal Code. Article 943 is as follows: " 'Swindling' is the acquisition of any personal or movable property, money or instrument of writing conveying or securing a valuable right by means of some false or deceitful pretense or device, or fraudulent representation with intent to appropriate the same to the use of the party so acquiring, or of destroying or impairing the rights of the party justly entitled to the same." After specially enumerating certain acts within the meaning of the term "swindling," subdivision 4, of article 944, provides: "The special enumeration of cases of swindling, above set forth, shall not be understood to exclude any case which, by fair construction of the language, comes within the meaning of the preceding article." Article 946, which we think notably important, is as follows: "It is not necessary in order to constitute the offense of swindling that any benefit shall accrue to the person guilty of the fraud or deceit, nor that any injury shall result to the persons intended to be defrauded, if it is sufficiently apparent that there was a willful design to receive benefit or cause an injury." Article 949 of the Penal Code is as follows: "Every person guilty of swindling shall be punished in the same manner as is provided for the punishment of theft, according to the amount of the money or the value of the property or instrument of writing so fraudulently acquired." Under these provisions of our Penal Code, it is our belief that the law intends to punish any one who willfully and knowingly makes a false representation as to a substantial and material fact, whereby he induces another to part with his property and that the grade of the offense is to be fixed as stated in article 949, by the value of the property so fraudulently acquired, and that construing this last named article of our statute, in connection with the provisions of article 946, which provides in terms that it is not necessary in order to constitute the offense of swindling that any benefit shall accrue to the person guilty of the fraud, or that any injury shall result to the person intended to be defrauded, that it is inconceivable that our lawmakers should ever have intended that the grade of the offense should be fixed by any other testimony than the value of the property the possession of which is yielded up on such fraudulent representations. The law concerns itself with two questions only: (a) was the false pretenses willfully and

knowingly made with respect to the property so fraudulently acquired; and (b) what was the value of the property acquired by the person making the false representations, the possession of which was lost by the person trusting to the untrue statements so made. We recognize that our laws are made for erring man and are to be construed by courts, subject always to error and misconception and that we may in vain hope that it may ever be truly said of our statutes that they are always "right, rejoicing the heart"; or that their "commandments are pure, enlightening the eyes," but we do believe that these statutes manifest and evidence, in such conclusive fashion as to admit of no doubt or controversy, that it was intended to punish any man and every man who secured the property of another on a representation known to be untrue, and that the grade of his offense should be fixed solely and only by the value of the property the possession of which is so fraudulently acquired. Any other construction would encourage, if not lead to dishonesty. Any other construction would make article 946, which declares that it is immaterial that any benefit shall accrue to the person guilty of fraudulently acquiring the property, absolutely meaningless and would substantially nullify the provisions of article 949, which says that the person swindling shall be punished in the same manner as provided for in the punishment of theft, that is, according to the amount of money or the value of the property so fraudulently acquired. We may never hope, possibly we shall never realize, that our laws should be as inflexibly just as the Ten Commandments and as ethically pure as the Sermon on the Mount, but by their proper interpretation, we can uphold their honesty and efficiency, and where provision is made for the punishment of a citizen who fraudulently acquires by deliberately untrue statements the property of another citizen, mete out to him the measure of punishment, tested by the value of the property lost by the one and acquired by the other.

Again, appellant contends that this court erred in holding that it was not error for the trial court to refuse to give in charge the special instruction requested by him, to the effect, "that Drane & Co. had the right to compel Mrs. Richmond and the People's National Bank to marshal their securities, and to make their indebtedness out of the other security held by them, before resorting to their security upon the hay grown upon the Richmond farm, and that if the security given by LaMoyne to Drane & Co. was of greater value than the hay-press, that he bought from Drane & Co., he should be acquitted." The doctrine of marshaling securities as between creditors of a common debtor in all contests involving priority and adjustment of liens is well recognized and has been frequently applied. Brown v. Thompson, 79 Texas, 58; Rogers v. Blum, 56 Texas, 1; Pridgen v. Warn, 79 Texas, 588; 1st Story Equity Jur., paragraph 633. If, however, we are correct in our conclusion that the grade of punishment is to be fixed by the value of the property acquired, this contention of appellant is unsound and the court was not in error in so holding. We confess that we can

not believe that it was ever intended, under the provisions of our Penal Code, that where one is induced to part with the possession of his property on the false representations, deliberately made in respect to the material fact, that in a criminal case, the law of marshaling securities should ever apply. Believing that the cases of Gaskins v. State, 38 S. W. Rep., 470; Perry v. State, 39 Texas Crim. Rep., 495; 46 S. W. Rep., 816, and Lively v. State, 74 S. W. Rep., 321, are unsound, the conclusion therein reached erroneous, and the effect hurtful, we here in terms overrule these decisions and declare them to be no longer the law in this State. Believing, on full reflection, that the rule announced in the original opinion is correct, the motion for rehearing is hereby overruled.

*Overruled.*

DAVIDSON, Presiding Judge (dissenting).—This case is before the court on motion for rehearing, it having been affirmed at the recent Dallas term.

Several questions for revision are presented which it is urged the court was in error in affirming. My brethren did not agree to the contention of appellant. I am of the opinion this case should be reversed and the affirmance set aside.

The record shows that appellant bought from J. M. Hoskins, vice president and general manager of Drane & Co., a corporation, a hay-press and lifting-jack for which he agreed to pay $250. This occurred in Navarro County. Hoskins testified that appellant represented to him that he lived on his own farm near Rice in Navarro County, which consisted of 220 acres of land, one hundred of which was in a hay meadow, on which grew fine hay, in sufficient quantity to pay for the press. He said the hay was matured and ready to cut; that there was no lien upon the hay; that he would execute a mortgage on said hay and the property bought from said company, to wit: hay-press and lifting-jack, and some other property. The trade was agreed upon, the note and mortgage executed, and the hay-press and lifting-jack shipped to appellant at Rice. He says he would not have sold appellant the property if he had doubted his statement; that he was induced by his statement and representations and the security given to sell the property to appellant. The press cost $170 and the freight was $30, making a total of $200. To this Drane & Co. added ten per cent. extra for expenses, making $220. The other $30 I suppose was profit. Appellant executed a mortgage upon this property, and a McCormick mower and a rake. The McCormick mower cost $40 wholesale and $50 retail. The rake cost $18 or $19 and sells for $25. This note and mortgage were executed before appellant received the hay-press and lifting-jack, which were shipped to him from Dallas, Texas, by order of Drane & Co. Brooks testified that a hay-press such as described would cost the retail merchant $200 including freight, and was sold for $225 cash and $250 on time. The sale and the execution of the note and mortgage occurred on August 2, 1905.

Absher testified that on or about October 10th, 1905, he called on appellant for settlement of the note due Drane & Co. Appellant informed Absher he intended to buy the farm was why he told Mr. Hoskins he owned it. It seems, without going into a further detailed statement in regard to some of the other matters, in a general way, that appellant was the tenant of Mrs. Richmond who had a landlord's lien on the 220 acres of grass and crops, etc. for her rent that year, which was $200. At the time of the execution of the mortgage and note this had been reduced by payment on the part of appellant $100, thus leaving $100 at that time due his landlord. These matters between Mrs. Richmond and appellant had been reduced to writing in the shape of a mortgage. Absher testifies further that he found out that the hay mentioned in the mortgage which was growing on the land at the time of its execution was also included in Mrs. Richmond's mortgage, and was also included in another mortgage given to the People's National Bank at Ennis, Texas. Appellant showed Absher the hay included in the Drane & Co. mortgage which was in a barn, claiming that he had 5,000 or 6,000 bales, but Absher thought he had only 3,000 bales. During their conversation appellant said to Absher that he owed $100 rent, and had cattle and mules and would mortgage them if he was not satisfied. This witness wrote on the back of note which appellant signed. This witness on cross-examination testified: "We (speaking of Drane & Co.) sold the hay-press, mower and rake to Phillips & McCorley for $225 some time next summer. We turned LaMoyne's note over to Phillips & McCorley and authorized them to give it to LaMoyne if he would deliver them the hay-press, mower and rake. We then sold it to Phillips & McCorley for $225 on two years time." This witness further testified that appellant offered to turn the property back, but Mr. Jack, appellant's attorney, wanted Drane & Co. to pay his attorney fee and they refused. Phillips & McCorley went to see Drane & Co. about making a deal for the property. Drane & Co. told Phillips & McCorley to take appellant's note and give it to him and get the property. Drane & Co. then sold to them the property for $225. This witness further testified he went twice to see appellant; once he was away, and the next time was October 10th, date above-mentioned, and that on this occasion appellant told him he had mortgaged his hay to Drane & Co. He signed the statement on back of note. The note shows it was $250 at 10 per cent. interest, and in the event of a default in payment at maturity, and it is placed in the hands of an attorney for collection, or suit is brought on same, then an additional ten per cent. on the principal and interest shall be added as collection fees. It is further stipulated in the note that if $125 and interest due is paid on this note by maturity, the balance may go until October 1st, 1906. The endorsement on the back of the note mentioned by Absher is as follows: "10-10-1905. Rice, Texas. A. D. LaMoyne have about 3,000 bales hay now in barns and same being mortgaged to The Drane Company.—I owe about $100 rent, and have a bale of cotton

to pay for it. I will be in on or by the 10-19, '05, and pay or arrange this matter satisfactory with The Drane Company, this 10-10-1905. A. D. LaMoyne, Witness W. H. Absher." The mortgage given to the bank at Ennis includes the crop of cotton, corn, hay and the rent from the tenant Warren, who was cultivating twenty-five acres of land to be grown by appellant during the year 1905, consisting of fifty acres corn and twenty-five acres of cotton, and all hay of any description grown during the year 1905, on the Richmond farm in Navarro County, about one half mile west from Rice, Texas, and he makes agreement to gather and put the crop in condition for market, and stipulates the delivery at Ennis, etc. This mortgage also includes three horses, nine head of cattle and was for $316.15 for money and supplies to be advanced, etc. This mortgage was executed on the 13th of March, 1905, filed and registered at nine o'clock a. m., volume 60, page 96, March 14, 1905. The mortgage to Mrs. Richmond was dated 2nd day of January, 1905, and was filed and registered at ten o'clock on the 24th day of January, 1905, in Navarro County. Drane & Co. were in business in Corsicana, the county seat, where the mortgages were filed and registered. Appellant represented, among other things, as Hoskins testified that he owned this land and the grass on it, and there was no lien on same at the time of the execution of the mortgage to Drane & Co. This seems to be substantially the State's case, except the further fact that he did not own the 220 acres of land but that it belonged to Mrs. Richmond. Appellant testified that he had a conversation with Hoskins in which he stated to him he needed a hay-press and if he could buy one on his terms he would do so, and told Hoskins he would give him a mortgage on all of his hay outfit; that he had a new mower for which he paid $50 and a new rake for which he paid $25; that neither had been used. That he did not tell Hoskins that he owned any land; that Hoskins said to him that he (appellant) ought to add the earnings of his hay-press and he (appellant) offered to do so. Hoskins then made the note and mortgage. Appellant sold the hay-press, mower, rake and lifting-jack to Phillips. Phillips gave him his note and $7.50. The $7.50 was for another rake not included in the mortgage. That he had about 6,000 bales of hay when Absher came to his house October 10th; that thirty bales are counted a ton; that there were about 200 tons of hay which was worth $8 per ton; that Absher wanted him to turn over all the property included in the mortgage and the hay, which he would not do. The hay-press cost $250, and that was what he offered to pay for it; that he gave mortgage to Drane & Co. on hay-press, also on his mower and rake which cost him $75; also mortgage on the earning of his outfit. There was some contradiction in the testimony of Phillips and appellant in regard to the number of bales of hay discussed between them, and about some other matters. He stated further that Phillips and McCorley came to him with a view of purchasing the hay outfit; that he told them he owed Drane & Co. $250 and interest, and if they would settle that indebtedness to Drane & Co. and release him

and get his note he did not care how they settled, or what they paid Drane & Co. That Phillips & McCorley went off and came back with his note and turned it over to him, which he turned over to his attorney, Mr. Jack. Jack testified that he represented appellant on former trial; had the note he gave Drane & Co. for the hay-press; don't know where it is; it had been mislaid. That he represented appellant before this prosecution in his matter with Drane & Co. That appellant signed bill of sale to Drane & Co. for all mortgaged property and sent to him. The witness tried to get Drane & Co. to pay him his fee and they would not do it and witness would not turn them over the bill of sale. The bill of sale is set out and dated June 6, 1906, signed by appellant. Said he did not settle with Drane & Co., but went with Phillips & McCorley to Drane & Co. and Drane & Co. turned them over appellant's note, and witness understood they got the machinery and settled some way with Drane & Co. McCorley testified that when he went to see appellant in regard to buying the hay outfit, appellant told him he had put up 1,750 bales of hay the year before, 1905, same year he bought the press from Drane & Co., and he said he did not give a damn whether witness paid Drane & Co. for the press or not. McCorley said he and Phillips desired to buy the press, mower and rake and appellant replied that he owed Drane & Co. $250, and if witness would settle with Drane & Co., and bring him his note, he did not care how the matter was settled, or whether witness ever paid him. He said he had bought it on credit and witness could do the same. He testifies further in regard to taking up appellant's note from Drane & Co., and getting the hay-press, mower and rake, and paying Drane & Co. $225. Perhaps this is a sufficient statement of the facts.

In order to affirm the judgment in this case and overrule the motion for rehearing, my brethren deemed it necessary and proper to overrule the case of Gaskins v. State, 38 S. W. Rep., 470; Perry v. State, 39 Texas Crim. Rep., 495, and Lively v. State, 74 S. W. Rep., 321. Perhaps it would be useless to go into a long discussion of the reason why these cases should not be overruled. The propositions upon which my brethren seem to plant their reason for overruling those cases is, that wherever property is acquired by reason of the supposed false pretenses or representations, the criterion of punishment is only fixed by full value of all the property acquired at the time, and where in those cases a contrary view is stated they are erroneous, and by reason of that conclusion it would seem necessary to go further to the basic proposition, that it would make no difference how thoroughly secured the supposed defrauded party was for transferring the title to the property, that if there occurred any misstatement or false representation inducing the transfer, the party would be guilty. I cannot altogether agree with the construction placed upon the articles of the Penal Code with reference to swindling. Article 943 Penal Code is as follows: "Swindling is the acquisition of any personal or movable property, money or instrument of writing conveying or securing

a valuable right by means of some false or deceitful pretense or device, or fraudulent representation with intent to appropriate the same to the use of the party so acquiring, or of destroying or impairing the rights of the party justly entitled to the same." Article 946 Penal Code reads: "It is not necessary in order to constitute the offense of swindling that any benefit shall accrue to the person guilty of the fraud or deceit, nor that any injury shall result to the person intended to be defrauded, if it is sufficiently apparent that there was a willful design to receive benefit or cause an injury." It has always been held in Texas and recognized by the majority opinion as correct that the fraud in swindling is tantamount to fraud in theft, the difference in result being that in theft the title is not parted with or intended to be parted with, whereas in swindling title is supposed to pass. A fraud or false pretext, or fraudulent representation, under theft statutes, only transfer the possession, not the title; whereas in swindling it transfers the title, the possession being merely incidental. Then the statute of swindling only refers to acquiring title to such property by means of fraudulent pretenses or devices, but in any event and in all events the property must be acquired; that is, the title must pass or there is no acquisition. Whenever this point has been reached; that is, the title of the property has passed, then under article 946 supra, it is not necessary to constitute swindling that any benefit shall accrue to the party guilty of the fraud or deceit, or that any injury shall result to the party or parties to be defrauded, but at all events the title to the property must pass, and not only must it pass, but there must be a fraudulent acquisition. A party can only be defrauded out of so much property as was obtained by false pretenses and fraudulently appropriated or intended to be fraudulently appropriated. Of course, if the party is not defrauded out of anything, he has not been swindled, and it would make no difference how many false representations or false pretenses were made or devices had been practiced. The party must be either fraudulently deprived of the value of the property itself or the title must pass to him by means of the fraudulent device or pretense otherwise the party transferring it would not be defrauded. As before stated, if he is not defrauded out of anything, as a matter of course, he is not swindled, and I am of the opinion that the authorities on this question are practically if not unanimously one way. If the party takes a sufficient amount of security to guarantee himself against loss, then he has not been defrauded, and so far as the writer is aware, no court has held that a party would be guilty of swindling whatever may have been his false representations if the party transferring the property to the would-be swindler fully protects himself against loss. See State v. Palmer, 50 Kans., 318; State v. Clark, 46 Kans., 65, and McGee v. State, 97 Ga., 199. In McGee v. State, supra, Atkinson, J. speaking for the court, says: "Where a debtor executed to two creditors separate mortgages to secure debts due to them respectively, and it appeared that, in procuring the credit to secure which the last mortgage was executed, he represented to the mortgagee that the property mortgaged was

unincumbered, such misrepresentation cannot be made the basis of a prosecution for cheating and swindling under section 4587 of the Code, unless it be shown that in consequence thereof, the second mortgagee has been in fact defrauded, and that in extending the credit upon the faith of such misrepresentation he has sustained a loss. In such a case, the burden is upon the State, not only to establish the misrepresentation made and credit given, but likewise a loss; and where the evidence shows that the mortgaged property has neither been sold, nor appropriated to the extinguishment of the senior mortgage, there is no such evidence of a loss by the junior mortgagee as will sustain a conviction of the debtor; especially is this true, where the evidence shows that the mortgaged property exceeds in value the aggregate indebtedness represented in both the mortgages, and it does not appear that the senior mortgage is being either claimed against the mortgagor, or enforced against the mortgaged property." It might be well enough to state here a fact which has been previously overlooked, that Mrs. Richmond's debt had been paid one half before the execution of the note, and it was all paid, as I understand this record, about the time of the maturity of Drane & Co.'s debt, but at the time of the maturity of Drane & Co.'s note the debt at the bank at Ennis had not been paid, but the inference from the record is that before Drane & Co. took the property both debts had been paid, and whatever obligation appellant was due by reason of the senior mortgage had been extinguished. In the case of State v. Palmer, supra, it was contended by appellant that McClelland in the case was not defrauded. He seems to have been the mortgagee or at least the party alleged to have been injured. McClelland claimed he was agent of defendant for the time during which he let her have money, and that the arrangement between them, was that he let her have certain amounts of money to put into her business, buying and selling silkworm eggs, and which he was to receive back out of the first sales with a share of the profits, and in the meantime he was to be secured with certain notes which he was to hold as collateral security for all money advanced or loaned, and he stated he would not have let her have the money without the notes as security. He let her have in all, less than $1,300 that he did not get back, and the evidence shows that he received from her, as security, a note for $700, one for $1,500, and one for $3,000. There is some evidence to show that the $3,000 note was worthless. There was never any attempt on the part of McClelland or any one for him, to collect said note. It is said if the two notes were good and collectible, McClelland had at least $2,200 in security for less than $1,300 that he let the defendant have and did not get back, and the court said, "With such a state of things, we do not see how he was defrauded. It may be said that he would not have let the defendant have the $200 August 28, 1891, without the $3,000 note as additional security.' That may be true; but if true, and if the $3,000 note is worthless, yet if the collateral already in his possession was sufficient to save him from loss on the $200, he

was not defrauded; and if not defrauded, the defendant could not be guilty of a crime in connection therewith. The mere obtaining of money under false pretenses does not alone constitute a crime. The money must be obtained to the injury of some one. Though money is obtained by misrepresentation, if no injury follows, no crime is accomplished. In this case, the defendant was undoubtedly guilty of many flagrant misrepresentations and other dishonest acts; but if all such representations and dishonest acts did not actually result in injury to McClelland, she cannot be convicted in this State simply because upon the face of things she is bad. A person must be charged with and convicted of some specific offense, if convicted at all. It will not do to convict on general principle, because the evidence shows the defendant devoid of common honesty," and this opinion was rounded up with this expression: "We think the record wholly fails to show that McClelland was defrauded out of anything by the defendant." In the case of State v. Clark, supra, after stating the facts, the allegation was that appellant obtained $5,600 from the Stock Yards Bank at Kansas City by falsely representing to the agent of the bank that he was the owner of 143 head of cattle, and had good right to mortgage same. The evidence for the State disclosed the fact that the defendant was indebted to the firm of Irwin, Allen & Co., of Kansas City, in the sum of $3,100 at the time the money was charged to have been obtained. To procure the loan of $5,600 the defendant gave a chattel mortgage upon the 143 head of steers, and some other stock, and also furnished as indorsers upon the note which he executed, Irwin, Allen & Co., and W. H. Conklin. Out of the loan thus procured the defendant paid Irwin, Allen & Co. the amount due them, and received from the bank three cashier's checks for the balance of the $5,600. Some six weeks after the mortgage was given, it was discovered that the defendant did not have all the cattle he had included in the mortgage, and the bank took possession of the stock described in the mortgage which could be found and sold the same, realizing therefrom the sum of $3,969, leaving the balance of $1,831 upon the note given for the debt and interest. The evidence upon the part of the State and the defense showed that the indorsers upon the note were good, and the balance could have been collected if suit had been instituted, but no effort was made before the filing of the information in this case to collect the amount due, except, some conferences over the matter and personal requests to pay the balance due. It seems to have been conceded that Irwin, Allen & Co., and W. H. Conklin were financially responsible. The court then asked this question: "Can it be said under this state of facts, that an offense, under the statute, for obtaining money or property from the bank by false pretenses has been made out?" The court then sets out the elements of the offense of swindling and says they must concur in whole or in part to induce the owner to part with his property when the false pretenses are resorted to, and cites quite a number of authorities. Copying further from this opinion: "Tested by the above rules, which seem to be supported by reason and authority, it must appear that some one

has been defrauded to insure a conviction. This one element is essential. Can it be said that the Stock Yards Bank has actually been defrauded by the defendant, when it holds a note upon which there is a balance of less than $2,000 and the indorsers thereon are solvent, and no steps are taken to enforce the collection? The language of the court, in the case of People v. Wakeley, supra, is: 'But it does not amount, in law, to a false pretense unless made with a fraudulent intent, and the person parting with the property is actually defrauded.' Was the Stock Yards Bank actually defrauded? What right was it deprived of in the business transaction? It had parted with no money, but it held a note which was conceded to be good, aside from the security given by the defendant, and we fail to see in what way it was injured. If it was not defrauded, this essential ingredient of the crime charged was lacking, and, unless evidence can be produced to show that the bank was actually defrauded, the defendant should be discharged." If there is any false pretense in this case, as I understand the record, claimed by the State as testified to by Hoskins, it is found in the fact that defendant said to him that he had some matured uncut grass or hay on which there was no lien. There was no attempt to obtain a lien on the land. There could be no false pretenses in the promise to pay the earnings of future work that might be obtained in money for working the hay outfit. So we are narrowed down, as I understand the case, to the representation or pretense of the one isolated fact that is, that the appellant said to Hoskins that he had 100 acres of land on which was matured but uncut hay with no lien on it. Appellant denies the statement of Hoskins. Appellant, as a matter of fact, under the rental contract with Mrs. Richmond owned the hay during that contract; he had paid $200 rent or agreed to do so, having paid $100 of it for the 220 acres, part of it to be used as a farm, and the other for growing hay. It was his property as far as it could be transferred by the rental contract. So this is a very small matter about the ownership at this point. If that hay had been baled and stolen the ownership would have been very clearly in appellant, and the ownership would also have been in appellant if somebody had obtained that hay by false pretenses. Then the only false representation occurs to the writer is the one involved in the statement that there was no prior lien on the uncut hay, and whether or not it was a fraudulent representation such as contemplated by the statute, was it one that would have ordinarily or legally have misled Hoskins. The writer is under the impression that it was not. A false pretense, token or writing, to be criminal, must, it has been held, be of a nature to deceive, and such as the victim under the circumstances may rely upon. The cases maintain that a false pretense is not criminal unless calculated to deceive persons of ordinary prudence and discretion. Com. v. Grady, 13 Bush., 285; People v. William, 4 Hill., 90. And it has been decided that where a defendant falsely and fraudulently represented that he owned property free from incumbrance, when in fact there was a recorded mortgage against it, and by such representation obtained money from one who was ignorant of the mort-

gage, the defendant was not guilty of obtaining the money by false pretenses, if the party from whom it was obtained had the means of detection at hand. Com. v. Grady, supra. The authorities, however, are divided upon this proposition. But as said in Com. v. Grady, supra, the alleged defrauded party could have satisfied himself so easily by just stepping into the clerk's office and ascertaining whether there was a mortgage of record or not. In the case in hand these representations testified to had been made to Hoskins, it seems, from the record, in the town of Corsicana, county seat of Navarro County. The county clerk's office shows both mortgages were filed and registered, one early in January, and the other in March. These mortgages were filed and registered in that office long prior to August second when this mortgage to Drane & Co. was executed. The slightest degree of caution or discretion or prudence would have settled the fact to Drane & Co. that these two mortgages were of record, and to show that they were not altogether misled or imposed upon, the mortgage executed to them by appellant provides that if his representations should prove untrue, they were authorized to take charge of the mortgaged property for their protection.

The writer is of the opinion that the representations here are not of such a fraudulent character as to bring it within the statute; and the evidence shows—all through the record shows that this is a civil, not a criminal transaction—Appellant at once, when they desired it, turned over to them everything in payment. He restored to them their property which is very strong evidence that there was no intent to defraud at any time. All of these matters grow out of and relate back to the original contract and what occurred between the parties at the time of the trade; and under Absher's testimony it seems when he went to collect the debt there were several thousand bales of hay. He was representing Drane & Co. in a settlement or attempted settlement with appellant.

So, as I understand this record, there was no attempt in any way to defraud Drane & Co. out of their property or money. They let the matter go along until the following summer, and then cancelled the debt by taking back the machinery and selling it to Phillips & McCorley. There is nothing to indicate from this testimony, as I understand it, that if Absher had desired to get a fair settlement it would not have been accomplished. The matter is left in that position with several thousand bales of hay on hand; with the machinery under mortgage on hand, and supplemented by the endorsement placed on the note as evidenced by appellant's signature, which is in the following language: "10-10-1905. Rice, Texas. A. D. LaMoyne have about 3,000 bales hay now in barns and same being mortgaged to The Drane Company—I owe about $100 rent, and have a bale of cotton to pay for it. I will be in on or by the 10-19-'05 and pay or arrange this matter satisfactory with The Drane Company, this 10-10-1905. A. D. LaMoyne; witness W. H. Absher." This whole case has the appearance to the writer, taking in all its bearings, of being a civil case instead of a criminal prosecution.

Now, with reference to the other question, that is, ample security to

protect the debt relieves of swindling.  Concede appellant informed Hoskins that there was no prior lien on the hay, and that it was a false statement.  Then, we have Drane & Co. selling to appellant machinery that cost $200 laid down at Rice.  They charged him up with 10 per cent. extra charges for something which is not stipulated, and $30 additional, making a total of $250.  The machine is said to have been worth, under the testimony of Brooks, and Hoskins, $225 in cash, or on time $250.  For the securing of these debts they took a mortgage on the machine, which they sold for $250, and which is supposed to be worth that amount as it sold for that amount, and in addition to secure themselves safely, took a mortgage on the other two pieces of machinery, amounting to $75, making their security $325 for the debt of $250.  Evidently on the tenth of October, at the time Absher saw appellant out at his place, there was about 3,000 bales of hay which they testified was worth 25 cents or 30 cents a bale.  He owed the rent or balance at that time it seems of $100.  The hay was still further bound to some extent and doubtless for the indebtedness to the bank at Ennis secured by mortgage on three horses, nine head of cattle, and crops and things of that sort which were mortgaged to the bank.  Now, it would seem from this statement that Drane & Co. was amply secured for their $250 at the time of the execution of the mortgage.  Then, as before stated, as I understand the authorities everywhere to hold, if the mortgagee takes sufficient property to protect himself, false representations do not bring the case within swindling.  Drane & Co. had taken ample security to protect themselves, and I need go no further to warrant this statement than the face of the mortgage.  This could be supplemented with the testimony of Hoskins and Absher.  Now, if these propositions are true, then it occurs to me if appellant is not guilty of swindling, it would make no difference how many false representations he made.  Then I take it, as a further proposition, that a party is not swindled out of anything except what he loses by virtue of false representations, and if the security is ample to protect against loss, the false representations do not come within the statute.  It would therefore follow as a correct proposition that Drane & Co. could be swindled out of only what they in fact lost, if they lost anything.  The authorities cited, it seems to me, support that proposition, and my brethren in overruling the Gaskins, Perry, and Lively cases, supra, are in error.  I am not discussing the question where parties who give mortgages sell the mortgaged property to evade paying the debt, for we have another statute which punishes a party who sells mortgaged property.  That question is not in the case.

As this case presents itself to my mind, and under the authorities, the State has no case, for Drane & Co. whatever else may be said about this case, amply secured themselves with property $75 in advance of the value of their debt of $250, and amply secured themselves at the time of the execution of the note for price of machinery sold appellant.

For the reasons above I respectfully enter my dissent from the affirmance.