No. 57,704
No. 57,404
No. 57,647

STATE OF KANSAS, *Appellee/Cross-Appellant,* v. ELDON E. KEE, JR., *Appellant/Cross-Appellee.*

(711 P.2d 746)

Opinion filed December 6, 1985.

*Glenn E. Casebeer II*, of Schneider & Casebeer, of Coffeyville, argued the cause and was on the briefs for appellant/cross-appellee.

*Timothy G. Madden*, assistant attorney general, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

MILLER, J.: Defendant Eldon E. Kee, Jr., was convicted by jury trial in Allen County District Court of theft, K.S.A. 21-3701, and, upon a separate trial, of making a false writing, K.S.A. 21-3711. Motions for new trial were denied. Defendant was sentenced, fined and placed on probation. He appeals from both convictions. The State cross-appeals from the granting of a directed verdict on one of the charges.

The defendant was originally charged in a single information with seven felony counts. The first five counts alleged that he had stolen certain oil field equipment from two different leases, contrary to K.S.A. 21-3701. The sixth count alleged that he had made a false writing with the intent to induce official action, contrary to K.S.A. 21-3711. The seventh count alleged that he had committed theft by deception against the Western Fire Insurance Company, contrary to K.S.A. 21-3701. Upon motion of the defendant, the trial court severed count No. 6, the false writing charge. The theft charges were tried first, and defendant was convicted of the theft of oil field equipment as charged in count No. 5. About thirty days later, trial was held on the false

writing charge, and defendant was again convicted. We will discuss first the errors claimed in the first trial, which resulted in the theft conviction. We need not concern ourselves with the charges of which defendant was acquitted, except as evidence of those offenses may be involved in particular arguments raised in this appeal.

## THE THEFT CHARGE

Count No. 5 of the information charged in substance that in July 1983, in Allen County, Kansas, Eldon E. Kee, Jr., did unlawfully, feloniously and willfully obtain or exert unauthorized control over one Cook brand No. 16 oil pump jack having a value of more than $100, with the intention to permanently deprive the owner, Yankee Energy Group d/b/a Monarch Oil Resources, Inc., of the possession, use or benefit of that property. It was the State's theory that Kee had ordered an employee, Rusty Beal, to remove the pump jack from the oil and gas lease where it was operating.

Beal testified that he was an oil field supervisor, or crew chief, employed by Union Corporation and the defendant; he took his orders from the defendant. At Eldon Kee's direction, Beal took a Cook pump jack from the Hendricks lease and moved it some forty or fifty miles to a farm owned by Jerry Burris, near Cherryvale. His father, Olan Beal, helped him move it. Olan Beal testified that he helped load and move the pump jack from the Hendricks lease, and that they unloaded it into a back corner of the Burris farm, in a location not visible from the roadway.

Mrs. Constance Leudecke testified that she was the president of Yankee Energy Group, a corporation, and that Monarch Oil Resources, Inc., was a subsidiary of Yankee, operating in Kansas. She was the secretary of Monarch, and a member of its board of directors. She stated that Monarch owned an oil lease in Allen County, Kansas, known as the Hendricks lease. Four wells were drilled on this lease. Mrs. Leudecke testified that she purchased a Cook pump jack from B & B Steel of Yates Center, that the jack was placed on the No. 4 well on the Hendricks lease, and that oil was produced therefrom and sold. She identified, and there were received in evidence, invoices dated September 3, 1982, from B & B Steel to Monarch, showing the purchase price of the pump jack to be $2,880.40, and showing the price of related equipment, including a three-horsepower motor which was on the jack, to be

$3,200.99. She made partial payment of about $1,000 to B & B on these invoices. She received a telephone call from Bernie Blevins, the owner of B & B Steel, in September 1983. He was angry because the pump jack was not on the lease and he thought she had sold it. She had not sold it and did not know it was gone. She was the only person who could have authorized the removal of equipment from the Hendricks lease, and she did not authorize Rusty Beal, Eldon Kee, or anyone else to remove that equipment.

Bernie Blevins, a seller of oil field equipment, testified that he does business at Yates Center as B & B Steel. He sold Constance Leudecke two Cook pump jacks. One was a No. 16 jack, larger than most pump jacks used in that area. He thought this jack was put on the No. 4 well, furthest from the highway. When he heard that it was missing from the lease, he went out and checked; he then drove around other leases, looking for this particular pump jack, but did not find it. After looking for several days, he finally gave up. Mrs. Leudecke paid him for some of the first things she bought from him, but she has not paid for the pump jacks and other equipment and still owes him between ten and eleven thousand dollars.

The first challenge is that the State did not present sufficient evidence to establish ownership of the pump jack. The information charged that the owner of the jack was Yankee Energy Group d/b/a Monarch Oil Resources, Inc.

In *State v. Pink*, 236 Kan. 715, 729, 696 P.2d 358 (1985), we said:

"In a criminal action, when the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained. *State v. Pham*, 234 Kan. [649, 667-68, 675 P.2d 848 (1984)]; *State v. Douglas*, 230 Kan. 744, 745-56, 640 P.2d 1259 (1982)."

The testimony of Mrs. Leudecke and the invoices received in evidence, coupled with the testimony of Mr. Blevins, was sufficient to make out a prima facie case of ownership of the pump jack. Under the evidence, a rational factfinder could well have found that Yankee, doing business as Monarch, was the owner of the equipment.

Kee also claims that the trial court erred in not instructing the jury on the lesser included offense of misdemeanor theft. He does not contend that the evidence was insufficient to establish the *value* of the pump jack at more than $100. Instead, he advances the novel argument that the purchaser did not completely pay for the pump jack and there were many liens against the leasehold estate and, thus, the owner's *interest* in the pump jack had a net value of less than $100. We do not find this argument persuasive. It is the *value* of the personal property stolen, not the interest that the owner has in it, which determines the offense. K.S.A. 21-3701 provides in applicable part:

"Theft of property *of the value* of one hundred dollars ($100) or more is a class D felony. Theft of property *of the value* of less than one hundred dollars ($100) is a class A misdemeanor." (Emphasis supplied.)

In this case, there was no evidence that even hinted that the pump jack was worth less than $100; value was not substantially in issue. An owner of a motor vehicle may owe more on the vehicle than it is worth; he or she, however, still remains the owner, and so long as the value of the car is more than the statutory amount, the car could be the subject of felony theft. Here it matters not that the owner had not fully paid for the pump jack; it is the value of that item, and not one's interest therein, that determines whether its theft amounts to felony or misdemeanor.

As his third point, defendant contends that the State committed reversible error by introducing evidence of a prior K.B.I investigation of him and evidence of prior crimes. The reference to the K.B.I. investigation came in during the testimony of Rusty Beal. The question and answer were as follows:

"Q   And when did you start working for Bluestem?
"A   Best of my remembrance it was some time in '81. It was when there was another KBI investigation going on at the time."

Defendant did not interpose an immediate objection, but at the next recess defendant moved for a mistrial. The trial court denied the motion. There was no reference by the witness to the defendant, and no indication as to what the investigation was about or who was the subject thereof. The statement was unsolicited, and it was vague. Under the circumstances we find no error in the court's ruling, and no prejudice to the defendant.

The prior crimes evidence complaint also arose during the

testimony of Rusty Beal. Beal testified that he moved several pieces of equipment from the Watts lease at the direction of the defendant, including a 100-barrel oil tank. He testified that he removed some rejected oil from the tank and hauled it to defendant's son's lease and pumped it into his tank. This was done some thirty to sixty days before he removed the tank. Defendant was charged with theft of the 100-barrel tank but not with the theft of the oil therein. The removal of the oil was obviously accomplished in order to facilitate the moving of the tank. The movement of the oil was a part of the overall operation and the evidence was not introduced to show a separate offense. In *State v. Gray*, 235 Kan. 632, Syl. ¶ 2, 681 P.2d 669 (1984), we said:

"Acts done or declarations made before, during, or after the happening of the principal fact may be admissible as part of the *res gestae* where they are so closely connected with it as to form in reality a part of the occurrence. Evidence that does not constitute a portion of the crimes charged is admissible if there are some natural, necessary, or logical connections between them and the inference or result which they are designed to establish."

The evidence complained of was a part of the *res gestae*, and was admissible independently of K.S.A. 60-455. No limiting instruction was required. See *State v. Gray*, 235 Kan. 632, Syl. ¶ 3, which reads:

"It is not error for the trial court to fail to give a limiting instruction on the purpose of evidence of other crimes when the challenged evidence is admissible independently of K.S.A. 60-455."

We find no error.

Next, the defendant contends that the trial court erred in overruling his amended motion for new trial based upon jury misconduct and in overruling his motion to subpoena jurors pursuant to Supreme Court Rule 181 (235 Kan. cxviii). Defendant filed a motion for new trial which was overruled. He then filed an amended motion for new trial, stating merely that jurors interviewed admitted they had read a news article and were aware that the defendant was facing numerous other charges; that the State had provided statements to the press during trial which the State knew had the potential of affecting the fairness of the trial in progress; and that the foreman of the jury indicated in an interview that the fact there were other charges pending had an effect upon how the jurors decided this case. When the motion was heard, counsel argued that if the jurors were called to testify it was counsel's belief, based upon interviews with the

jurors, that they would testify that they read articles in the newspaper; that they knew the defendant was awaiting trial on additional counts; and that that had an influence on their decision.

No affidavits of jurors or others were submitted to the court, no copies of the newspaper articles were offered in evidence and no evidence of any sort as to the statements allegedly made by the prosecution to the press or of juror misconduct was offered at the time of the hearing on the motion. Thus, the issue before us is not whether there was jury misconduct but whether a written motion and oral argument thereon—without any supporting affidavits or evidence—is sufficient to require the trial court to order that jurors be called for hearing on the motion for new trial.

In the recent case of *Walters v. Hitchcock*, 237 Kan. 31, 697 P.2d 847 (1985), Syllabus ¶¶ 1 and 2 are instructive. They read:

"In a hearing seeking an order recalling jurors for inquiry into alleged juror misconduct pursuant to Supreme Court Rule 181 (232 Kan. clvi), the burden is on the moving party to show the necessity for the order." Syl. ¶ 1.

"Generally, an affidavit of counsel containing statements purportedly made by jurors to the counsel is an insufficient basis on which to predicate error in a trial court's refusal to issue an order pursuant to Supreme Court Rule No. 181 (232 Kan. clvi) for the recall of jurors for inquiry of alleged juror misconduct." Syl. ¶ 2.

Also the earlier case of *Roy v. State*, 213 Kan. 30, 514 P.2d 832 (1973), is particularly relevant. In that opinion we said:

"Appellant next contends his constitutional rights were infringed upon by the prosecution releasing information on evidentiary matters to the press, and by juror misconduct in reading newspaper articles concerning the trial during recesses. We are concerned here with eighteen newspaper articles published during the period of approximately three years. We consider first the issue of juror misconduct. This court has consistently adhered to the well-settled principle applicable both to civil and criminal cases, that a juror's reading of newspaper articles pertaining to the trial is not grounds for reversal, new trial, or mistrial unless the articles are of such a character that they might have resulted in prejudice to the losing party." 213 Kan. at 32.

Similarly, in *State v. Fenton*, 228 Kan. 658, Syl. ¶ 1, 620 P.2d 813 (1980), we said:

"In recent years, this court has consistently adhered to the rule in both civil and criminal cases that juror misconduct is not a ground for reversal, new trial, or mistrial unless it is shown to have substantially prejudiced a party's rights. The party claiming prejudice has the burden of proof."

The trial judge in the case now before us was not a resident of Allen County where the case was tried, and whether he was

aware of the content of the newspaper articles referred to by counsel, we do not know. The articles themselves were not in evidence and are not a part of the record on appeal. Thus, we cannot tell whether the articles themselves were prejudicial. We are faced with the same situation as was the trial court: There is no evidence in the record to support this claim of error. The trial court did not err in refusing to authorize the calling of jurors or in overruling the amended motion for new trial.

## THE CROSS-APPEAL

Before turning to defendant's other contentions, all of which relate to the false writing conviction, we turn to the State's cross-appeal which arose out of the theft trial. Prior to trial, the judge, on motion of the defendant, severed the false writing charge. The theft charges were to be tried first, the false writing charge at a later date. At the conclusion of the theft trial and after both parties had rested, the defendant moved for acquittal on the charge contained in count No. 7, theft by deception from Western Fire Insurance Company, for the reason that the State had presented no evidence of that offense. The trial court sustained defendant's motion.

The problem arose prior to trial when the secretary of the administrative judge wrote a letter to counsel giving them a schedule of trial dates set by Judge Ashley in the various Kee cases. She indicated that trial on the "five-count case" would commence on August 27, 1984. The State proceeded to present evidence of the theft charges included in count Nos. 1 through 5. Count No. 6 had been severed. Count No. 7 was also a theft charge and had not been severed. There was no discussion of this problem until all parties had rested and the matter was ready to be submitted to the jury. Defendant then made his motion for acquittal on count No. 7.

Although the letter from the judge's secretary was incorrect in stating trial would be on five counts instead of six, that letter cannot serve as an order of the trial court to sever one of the counts in the information. The granting to a single defendant of a separate trial upon one or more charges contained within an information lies within the sound discretion of the trial court, and a ruling thereon will not be reversed on appeal absent a showing of an abuse of that discretion. *State v. Howell*, 223 Kan. 282, 573 P.2d 1003 (1977). The State does not challenge the trial

court's severance of the false writing charge, but instead contends that the trial court abused its discretion under the circumstances in sustaining the motion for judgment of acquittal. It is clear that count No. 7 was not severed by the trial judge. The State offered no evidence to support that charge. There was no abuse of discretion in sustaining defendant's motion for acquittal.

Additionally, a judgment of acquittal entered by the trial court on a motion made by a defendant at the close of the evidence is final and not appealable by the State, except in those special circumstances when the question reserved by the State is of state-wide interest and is vital to a correct and uniform administration of the criminal law. *State v. Lamkin*, 229 Kan. 104, Syl. ¶ 3, 621 P.2d 995 (1981). We find no special circumstances here and nothing vital to a correct and uniform administration of the criminal law. The cross-appeal by the State must be dismissed.

## THE FALSE WRITING CHARGE

Count No. 6 of the information charged in substance that on or about November 4, 1983, in Allen County, Kansas, Eldon E. Kee, Jr., did unlawfully, feloniously and willfully, and with intent to induce official action, cause to be made or drawn a written instrument, being a note extension agreement between Dale D. McKinsey and the Bank of Bronson, with knowledge that said writing falsely represented some material matter, or was not what it purported to be.

The evidence established that the defendant and his son, Lyle Kee, were officers and shareholders of the Bank of Bronson. Both had substantial loans from the bank, and defendant's note had been extended. State bank examiners had recently examined the Bank of Bronson, considered it to be a problem bank, and directed it to correct certain matters. One of the matters criticized was the McKinsey loan, which was not secured and was not supported by documentation.

Dale McKinsey sold his part of an oil and gas lease to Eldon and Lyle Kee. They paid McKinsey $75,000, and they still owed him $25,000. The Kees could not borrow further sums from the bank so they induced McKinsey to sign a note to the Bank of Bronson for $25,000. He received that money, completing payment for the lease. Lyle Kee promised McKinsey that he would pay the principal and interest on the note. Lyle did make one or

more interest payments. When the note became due, it either had to be paid or an extension agreement secured in order to satisfy the bank examiners. The evidence was that defendant was quite concerned about the bank examiners. In order to keep the examiners from pursuing their objection to the McKinsey note, defendant directed Jiggs Butts to sign Dale McKinsey's name to an extension agreement. Butts signed McKinsey's name to the extension agreement and defendant then gave the document to an employee of the bank, instructing him to take it to the bank and to say that McKinsey had signed it. Most of the conversation relating to this matter was taped and the tape recording was introduced in evidence. McKinsey testified that the signature on the extension agreement was not his.

Defendant's first claim of error on the false writing conviction is that the statute under which the charge was brought is unconstitutionally vague. The statute, K.S.A. 21-3711, reads:

"Making a false writing is making or drawing or causing to be made or drawn any written instrument or entry in a book of account with knowledge that such writing falsely states or represents some material matter or is not what it purports to be, and with intent to defraud *or induce official action.*" (Emphasis supplied.)

The general rules of statutory construction were recently stated in *State v. Thompson,* 237 Kan. 562, 563, 701 P.2d 694 (1985):

"This court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be sticken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *City of Baxter Springs v. Bryant,* 226 Kan. 383, 598 P.2d 1051 (1979). We have stated that the fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute."

The rules regarding vagueness and overbreadth are concisely stated in *State ex rel. Murray v. Palmgren,* 231 Kan. 524, 532, 646 P.2d 1091 (1982):

" 'The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily

guess at its meaning and differ as to its application is violative of due process. At its heart the test for vagueness is a commonsense determination of fundamental fairness.' *State v. Kirby*, 222 Kan. 1, 4, 563 P.2d 408 (1977)."

And see also *State v. Cantrell*, 234 Kan. 426, 434-35, 673 P.2d 1147 (1983); *J. G. Masonry, Inc. v. Department of Revenue*, 235 Kan. 497, Syl. ¶ 3, 680 P.2d 291 (1984).

One further familiar rule which should be mentioned is that a statute may be constitutional as applied to one set of facts and unconstitutional as applied to another. See *State v. Smiley*, 65 Kan. 240, 69 Pac. 199 (1902), *aff'd* 196 U.S. 447, 49 L.Ed. 546, 25 S.Ct. 289 (1905); *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, 231, Syl. ¶ 5, 689 P.2d 860 (1984). We must, therefore, consider the statute in context, not in isolation.

Defendant contends that the concluding phrase of the statute, "or induce official action," is vague and ambiguous. We cannot see how the defendant in this case could have been confused or misled by that language. Defendant and his son were both officers of the Bank of Bronson, and as such were subject to a limitation on the amount of money each could borrow from the bank. The son was already over that limit. The McKinsey "loan" was actually a loan to defendant and his son, and represented money they had in effect borrowed from the bank to complete purchase of an interest in an oil lease. McKinsey was not the borrower; Lyle was the actual borrower, and Lyle was obligated to McKinsey to make payment of both principal and interest on McKinsey's note. The bank examiners, of course, did not know the factual background behind the McKinsey note. When the note became due, defendant needed to have an extension agreement in the bank's possession in order to prevent the bank examiners from further investigation into the McKinsey note. There was evidence that the defendant was concerned that the bank examiners would return the following Monday morning, and that he wanted the matter taken care of. For this reason he had someone else sign McKinsey's name to the extension agreement. In other words, he caused this document to be falsified in order to appease the bank examiners, to prevent them from learning the truth about the McKinsey note, to keep them from taking official action which would have followed that discovery, and to entice them into approving the bank's loan portfolio.

"Official action," as used in K.S.A. 21-3711, means acts which are authorized by law or which are done under color or by virtue

of office. The state bank commissioner, the assistant commissioner and bank examiners are required by law to visit each bank at least every eighteen months, and may do so more frequently, for the purpose of making a full and careful examination of the condition of the bank's affairs. They are authorized to administer oaths and to examine the bank officers, directors and employees under oath. The examiner is required by law to prepare a written report which must contain a full, true and careful statement of the condition of the bank. See K.S.A. 9-1701 *et seq.*, as amended. If the bank commissioner determines that a bank is conducting its business in an unlawful or unsound manner, he or she may, through a special deputy commissioner, take immediate charge of the operation of the bank. K.S.A. 9-1714. It is clear beyond dispute that bank examinations and proceedings conducted in connection therewith are "official action." Under the facts before us, K.S.A. 21-3711 is not unconstitutionally vague or ambiguous. The making of a written instrument, knowing it to falsely state some material matter with intent to induce official action by a bank examiner, is clearly outlawed by the statute.

The next issue raised is a claim that the trial court erred in denying the defendant's motion for a bill of particulars. At the hearing on the motion, defendant's counsel informed the court that what the defendant wanted was for the State to set out what official action the State was alleging that the defendant intended to induce with the false writing. The trial court, after argument, denied the motion.

The trial transcript in this case makes it abundantly clear what the State's theory was, as we have noted in some detail above. The affidavit attached to the original complaint states in substance that the defendant told Butts to sign McKinsey's name to the note extension so that Kee would not have to explain McKinsey's overdue note, and that the Kansas bank commissioner was conducting an audit of the Bank of Bronson close to the time when the note extension was signed. While we do not have a transcript of the preliminary examination before us, the State contends in its brief that Stan Welch, a state bank examiner, testified at the preliminary examination and was available for cross-examination. At trial, Welch testified fully about the procedure followed by the auditors in reviewing the financial records of a bank, including review of documents supporting loans

and the preparing of a written report which may criticize certain loans or loan practices. He stated that the approval or the criticism of a loan is an official act.

K.S.A. 1984 Supp. 22-3201(5) provides in part that "the court may, on written motion of the defendant, require the prosecuting attorney to furnish the defendant with a bill of particulars." Thus, whether under the circumstances the prosecuting attorney should be required to furnish the defendant with a bill of particulars is a matter left to the sound discretion of the trial court. In this case the State could well have stated on the record, in answer to defendant's query, precisely what official action the State contended the defendant attempted to induce. However, it is abundantly clear from the record what the State contended, and the defendant was in no way misled. We find no abuse of discretion on the part of the trial court in overruling the motion.

Defendant contends that there was insufficient evidence to support his conviction on the false writing charge. We have already stated the rules to be applied and we have reviewed the evidence extensively and need not repeat it here. The evidence, when viewed in the light most favorable to the prosecution, is amply sufficient to convince this court, and does convince this court, that a rational factfinder could have found the defendant guilty of the false writing charge beyond a reasonable doubt.

Finally, defendant argues that he was not brought to trial on the false writing charge within 180 days of arraignment and, therefore, the charge should have been dismissed. The 180-day time limitation, and exceptions thereto, are provided by K.S.A. 22-3402. That statute provides in applicable part:

"(2) If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within one hundred eighty (180) days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3).

"(3) The time for trial may be extended beyond the limitations of subsections (1) and (2) of this section for any of the following reasons:

. . . .

"(d) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than thirty (30) days may be ordered upon this ground."

Both parties agree that trial on the false writing charge, count

No. 6, was originally set to commence on September 4, 1984, well within the 180-day limit. On that date, trial on the theft charges was still in progress. The trial judge's minutes state:

"9-4-84   Case scheduled for this date (false writing) continued on court's order due to scheduling conflicts."

The trial was subsequently commenced early in October, well within thirty days after the expiration of the 180-day period after arraignment.

Defendant has included as an appendix to his brief a copy of the trial judge's notes. The September 4 notation is at the bottom of one page, in chronological order, and is printed, while the judge's notes are for the most part in cursive writing. Defendant argues that "[I]t is obvious that someone had gone back to the trial judge's notes and added an entry on September 4, 1984." The printing is different from the handwriting above it; however, there is no showing that someone "had gone back" and made that entry. The notation may well have been made at the judge's direction, or by him. There is no evidence to support this argument.

There is nothing improper about the continuance in question. *State v. Steward*, 219 Kan. 256, 261-62, 547 P.2d 773 (1976), holds that a trial court may continue a case on its own initiative. There is no requirement that a formal hearing be held before a continuance is ordered. Scheduling conflicts—the continuance of the earlier case into the day allotted for trial of this case—would appear to be just the sort of situation contemplated by subsection (d) of the statute. We have considered other arguments advanced by the defendant, but find nothing improper in the matter.

The judgment is affirmed, and the State's cross-appeal is dismissed.