No. 77,575

STATE OF KANSAS, *Appellant*, v. CAROLYN A. STEPHENS, *Appellee*.

(953 P.2d 1373)

Opinion filed January 23, 1998.

*K. Michael Warner*, assistant district attorney, argued the cause, and *Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellant.

*Lewanna Bell-Lloyd*, of Olathe, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The State appeals the trial court's dismissal at the conclusion of the preliminary examination of the complaint that charged Carolyn A. Stephens with one count of theft by deception of over $25,000. The State appeals pursuant to K.S.A. 22-3602(b)(1).

After considering the evidence presented at the preliminary examination in July 1996, the trial court determined that there was not probable cause to believe that defendant committed the crime charged. The deficiency in the evidence was in the "value element of the crime."

Paul and Susan Smith were looking for a business to buy. Through a business broker, they learned in February 1994 that a liquor store located at 95th and Nall in Johnson County, Kansas, was available for purchase. The store was owned by Carolyn Stephens. The Smiths met with her several times. Stephens provided them with reports showing the store's expenses and income. In late February, defendant gave them copies of forms with the heading "Kansas Department of Revenue, Division of Taxation, Liquor Enforcement Tax Return." There was a completed form for each

month in 1993 showing the total gross receipts for the month and the amount of tax due for the month (8% of the gross). Each form bears the signature of Carolyn Ann Stephens, who is identified as the owner of the business. Also admitted into evidence were copies of the 1993 completed forms that actually were filed with the Kansas Department of Revenue. Comparison of the two sets of forms shows that the gross receipts from the forms provided to the Smiths consistently exceed those on the forms filed with the Department of Revenue (rounded to nearest dollar):

| 1993 | Smith form | Dept. of Revenue form |
|------|-----------|----------------------|
| Jan. | $23,653 | $19,289 |
| Feb. | 19,050 | 16,682 |
| March | 22,204 | 18,037 |
| April | 20,841 | 16,363 |
| May | 28,934 | 17,141 |
| June | 27,837 | 18,141 |
| July | 29,861 | 19,485 |
| Aug. | 28,773 | 16,555 |
| Sept. | 20,781 | 11,542 |
| Oct. | 24,851 | 12,340 |
| Nov. | 23,085 | 15,271 |
| Dec. | 38,375 | 18,687 |

On May 2, 1994, Stephens and Paul Smith entered into a purchase agreement for the liquor store. The parties agreed

"that for tax and other purposes, the purchase price of $59,000.00 shall be and is hereby allocated as follows:
   a) $29,000.00 as and for equipment, furniture and trade fixtures.
   b) $30,000.00 as and for the inventory named herein."

Defendant executed a bill of sale for the property the same day. Susan Smith testified that she and her husband relied on the misrepresentations regarding the amount of income in entering into the purchase agreement. The Smiths gave a check in payment of the purchase of the liquor store in the amount of $57,000. When the Smiths began operating the business, they found that their

gross receipts were about half what defendant had represented them to be.

After considering the evidence presented by the State at the preliminary examination, the trial court stated:

"The Court believes that the State has failed to sustain its burden of proof that a crime of felony theft of property worth $25,000 or more has been proven by the State. One of the essential elements of that crime is that the theft be of property of 25,000 or more. Just because someone gives a cashier check for 57,000 doesn't mean that they've been deprived of 57,000. The victims in this case purchased some inventory and some equipment. They may have been induced by the fraudulent statements to buy the liquor store in the first place, but I have no evidence in front of me which suggests what the true value of the liquor store is—or no evidence from which one can conclude that the theft was of $25,000 or more. The victims received something and it had some value. Whether that value was 50,000, 40,000, 35,000, or 20,000, I don't know. I haven't heard a bit of evidence about that. The Court finds that [based on] the value element of the crime of felony theft there's not probable cause to believe that occurred."

The trial court announced that it was dismissing the case. The State asked the trial court to bind over defendant on the charge of making a false writing for each of the tax forms. Defense counsel objected on the ground that the statute of limitations had run for prosecution on the proposed amended charge. The trial court took the matter under advisement.

In August 1996, the parties again appeared before the trial court. The trial court announced that it had determined that the crime of making a false writing, if committed, was completed on or about March 5, 1994. It concluded: "The prosecution for the crime of making a false writing is barred by the statute of limitations." The State has not pursued the statute of limitations question on appeal.

The State appeals the trial court's dismissal of the complaint on the ground that there was no proof on an essential element of the charged crime. In *State v. Garza*, 259 Kan. 826, 827, 916 P.2d 9 (1996), this court stated:

"The purpose of a preliminary examination is to determine whether it appears that a felony has been committed and that there is probable cause to believe the defendant committed the offense. If those findings are made, the magistrate will bind the defendant over for arraignment. K.S.A. 22-2902(3). In weighing the evidence the magistrate must determine (1) whether there is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves, to

cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief a felony has been committed and (2) if so, whether there is sufficient evidence to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. *State v. Bell*, 259 Kan. 131, Syl. ¶¶ 2, 3, 910 P.2d 205 (1996); see *State v. Farmer*, 259 Kan. 157, Syl. ¶ 2, 909 P.2d 1154 (1996); *State v. Bockert*, 257 Kan. 488, Syl. ¶ 2, 893 P.2d 832 (1995). When the State appeals the dismissal of a complaint, an appellate court's review of an order discharging the defendant for lack of probable cause is de novo. See *Farmer*, 259 Kan. 157, Syl. ¶ 1; *Bell*, 259 Kan. 131, Syl. ¶ 5; *Bockert*, 257 Kan. 488, Syl. ¶ 1."

K.S.A. 21-3701(a)(2) provides: "Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property: . . . obtaining by deception control over property." The degree of the crime of theft is established by the value of the stolen property. K.S.A. 21-3701(b) provides:

"(1) Theft of property of the value of $25,000 or more is a severity level 7, nonperson felony.

"(2) Theft of property of the value of at least $500 but less than $25,000 is a severity level 9, nonperson felony.

"(3) Theft of property of the value of less than $500 is a class A nonperson misdemeanor.

"(4) Theft of property of the value of less than $500 is a severity level 9, nonperson felony if committed by a person who has, within five years immediately preceding commission of the crime, been convicted of theft two or more times."

The theory of prosecution in the present case is that the stolen property is the cashier's check. According to the State, " 'We don't need to get into this difference in value because [the Smiths] would not have given up their cashier's check had they known these representations were false.' " Thus, according to the State's argument, $57,000 was stolen.

The State cites *State v. Stanley*, 116 Kan. 449, 227 Pac. 263 (1924), in support of its position that a victim's suffering a pecuniary loss is not determinative of the offense. Stanley was convicted of obtaining money under false pretenses. He represented to a purchaser, Gottman, that he owned certain real property and took payments over a period of a year and a half from the purchaser, who then was served with a notice to vacate the property. Rose

actually owned the property, Stubbs had an option to buy it from Rose, and Stanley had an option to buy it from Stubbs. Stanley argued that because he had a valid and enforceable option when he sold the property to Gottman, he lacked criminal intent to defraud. This court disagreed: "The false pretense charged and relied on is that he induced the purchase and procured the money on the representation that he was the owner of the property." 116 Kan. at 451. There was no contention that Gottman actually received something of value for his money, nor was value of the property at issue.

The other Kansas case relied on by the State is *State v. Aiken*, 174 Kan. 162, 254 P.2d 264 (1953). Aiken sold insurance policies on the representation that the annual premium was approximately twice the actual price, and he kept the amount over and above the premium for his personal benefit. Some victims recovered their losses from another insurance company, which prompted the defendant to argue that the evidence was insufficient to support his conviction of obtaining money under false pretenses. This court disagreed:

"Under our decisions the fraud was accomplished and the offense completed when the false pretenses were made and the money obtained on the faith of them and what appellant hoped to do and might have done under favorable circumstances in the future, or the fact the complainants might have or did recover the money so paid him by other means or from other sources, would not take away the criminal character of his acts in obtaining the money by the false pretenses to which we have heretofore referred." 174 Kan. at 167.

With regard to the proof necessary to establish the degree of the offense, the State relies on *State v. Kee*, 238 Kan. 342, 711 P.2d 746 (1985). Kee was convicted of theft and making a false writing. On the offense of theft, Kee argued that the trial court erred in not instructing the jury on the lesser included offense of misdemeanor theft. His theory was that the owner of the property had not yet completed paying for it so that the owner's interest in the property was less than $100, *i.e.*, below the dollar amount for felony theft. This court did not accept the argument:

"It is the *value* of the personal property stolen, not the interest that the owner has in it, which determines the offense. K.S.A. 21-3701 provides in applicable part:

'Theft of property *of the value* of one hundred dollars ($100) or more is a class D. felony. Theft of property *of the value* of less than one hundred dollars ($100) is a class A misdemeanor.' " 238 Kan. at 346.

The State contends that *Kee* stands for the proposition that only the value of the stolen item is to be considered in determining the degree of theft. *Kee*, however, does not involve a circumstance where the owner of the property receives something of value in exchange for the property he or she gives up.

The State cites several cases from other states for the proposition that a victim's receiving something of value is irrelevant to the criminal charge. Both *State v. Mills*, 96 Ariz. 377, 396 P.2d 5 (1964), and *State v. Roberts*, 711 P.2d 235 (Utah 1985), stand for the proposition that a conviction of obtaining money by false pretenses does not require a showing that a victim suffered pecuniary loss. Neither, however, involves a question of the degree of the theft offense. In *State v. Aurgemma*, 116 R.I. 425, 358 A.2d 46 (1976), Aurgemma entered into an agreement with a homeowner, St. Peter, to remodel a bedroom and the kitchen of St. Peter's house for $1,450. Aurgemma completed the bedroom, and St. Peter paid him $1,000. Aurgemma offered to remodel several other rooms for the additional price of $800, and St. Peter accepted the offer and paid $800 plus $45 for a kitchen sink. Aurgemma completed another bedroom, and the kitchen was ripped out to the bare walls. Then Aurgemma quit working on the house. He was convicted of obtaining $1,845 from St. Peter by false pretenses. On appeal, Aurgemma argued that

"a conviction for obtaining property by false pretenses hinges on the actual loss suffered by the victim, rather than on the amount of money paid or the worth of the property transferred, and that consequently the state's failure to offer any evidence that the value of the work left undone by him exceeded $500 precluded a felony conviction." 116 R.I. at 429.

The Rhode Island statute distinguished degrees of theft by the value of the property obtained. 116 R.I. at 429 n.2. The Rhode Island Supreme Court rejected Aurgemma's argument:

"The short answer to this contention is that the crime is committed at the moment the victim is fraudulently induced to part with his money or property. It is the amount of that money or the worth of that property that is pivotal, and the extent

of a victim's ultimate loss is immaterial on the issue of the degree of the offense charged. *La Moyne v. State*, 53 Tex. Crim. 221, 111 S.W. 950 (1908). Moreover, even proof that a victim has suffered no loss whatsoever or that the money fraudulently obtained has been repaid will not suffice as a defense. *State v. Mills*, 96 Ariz. 377, 379-82, 396 P.2d 5, 7-8 (1964); *Stewart v. State*, 256 Ark. 619, 509 S.W.2d 298 (1974); *People v. Brady*, 275 Cal. App. 2d 984, 994-95, 80 Cal. Rptr. 418, 424 (Ct. App. 1969). Accordingly, the state was not burdened in this case with establishing the value of the work left undone by defendant." 116 R.I. at 429-30.

*La Moyne v. State*, 53 Tex. Crim. 221, 111 S.W. 950 (1908), as stated by the Rhode Island court, stands for the proposition that a victim's ultimate loss is not the proper measure of the degree of the offense. The transaction involved was the defendant's procuring farm equipment by giving the seller a mortgage on other equipment and his hay crop. The misrepresentation was that the farm equipment and crop were unencumbered. La Moyne was convicted of swindling. Relevant provisions of the Texas penal code provided that the grade of the offense—felony or misdemeanor—is to be determined by the value of the property fraudulently acquired and that it is immaterial that any injury shall result to the person intended to be defrauded. The court fixed the time for determining the value of the property as the time the misrepresentations were made. 53 Tex. Crim. 221, Syl. ¶ 1. Although the original opinion is brief and unremarkable, on a motion for rehearing, a lengthy opinion denying the motion and an even lengthier dissenting opinion were filed. 53 Tex. Crim. at 225-239. The focus of those discussions was the question of valuation, and the matter was not without controversy.

The State's point in citing *Stanley* and *Aiken* is that the loss to the victim is not determinative of the value of the stolen property. However, both cases stand for the proposition that loss to the victim is not determinative of defendant's criminal intent. This rule recognizes that theft assumes many forms. To take the many variations into account, the court focuses on what is gained by the swindler rather than on what is lost by the victim.

In *State v. Saylor*, 228 Kan. 498, 503, 618 P.2d 1166 (1980), the court expressed its view of the legislature's reworking of the theft statutes:

"It is obvious to us that one of the purposes of the enactment of the consolidated theft statute, K.S.A. 21-3701, was to avoid the pitfalls of pleading where a defendant might escape a conviction for one type of theft by proof that he had committed another type of theft. There is now only the single crime of theft which is complete when a man takes property not his own with the intent to take it and deprive the owner thereof. A defendant may be convicted of theft upon proof of facts establishing either embezzlement, larceny, receiving stolen property, or obtaining property by false pretense."

The State contends that the present case should not be distinguished on the ground that the Smiths received something of value in exchange for their $57,000 check because, absent defendant's deceiving them about the liquor store's gross receipts, the Smiths would not have wanted it. In other words, defendant stole $57,000 from them because they did not want what they got for their money—a liquor store that was less profitable than defendant had represented hers to be.

Defendant counters that the evidence at the preliminary examination establishes that the value of the property obtained by the Smiths exceeded the amount of the check. The evidence defendant cites is the purchase agreement, which recites that the purchase price is $59,000, that $29,000 is allocated "as and for equipment, furniture and trade fixtures," and that $30,000 is allocated "as and for the inventory named herein." Thus, defendant argues no theft was shown. We disagree.

Defendant is charged with theft by deception or obtaining property by false pretenses. In *Aiken*, the court noted that a "false representation made with intent to cheat and defraud another by which money is obtained is a false pretense within the meaning of that term as used in our statute." 174 Kan. at 165. The court, as did the courts in *Aurgemma* and *La Moyne*, held that the offense is completed at the moment the victim is fraudulently induced to part with his or her property.

Here, the property which the Smiths parted with and defendant obtained was the $57,000 check. The theft occurred at the moment the Smiths were fraudulently induced to part with that check. The degree of a theft crime is determined by the value of the stolen property. *State v. Allen*, 260 Kan. 107, 115, 917 P.2d 848 (1996).

The property stolen was the check for $57,000. The value of what the Smiths received or the extent of their loss is immaterial in determining the degree of the theft. The evidence was sufficient to support a probable cause finding that defendant committed felony theft. Thus, we conclude that the district court erred in dismissing the complaint.

The judgment of the district court is reversed, and the case is remanded with directions to reinstate the complaint and for further proceedings in accordance with this opinion.