No. 91,179

STATE OF KANSAS, *Appellee,* v. DARYL A. BISCHOFF, *Appellant.*

(131 P.3d 531)

Opinion filed March 17, 2006.

*Julie A. McKenna,* of McKenna & Trocheck, P.A., of Salina, argued the cause and was on the brief for appellant.

*Amy Hanley,* assistant county attorney, argued the cause, and *Ellen H. Mitchell,* county attorney, and *Phill Kline,* attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

NUSS, J.: Daryl A. Bischoff was convicted by a jury of one count each of aggravated assault and criminal threat. The Court of Appeals affirmed the criminal threat conviction, but reversed and remanded the aggravated assault conviction on several grounds. We

granted the State's petition for review; our jurisdiction is pursuant to K.S.A. 60-2101(b).

The issues on appeal, and this court's accompanying holdings, are as follows:

1. Did the district court err in failing to give a unanimity jury instruction on the aggravated assault charge? No.
2. Were Bischoff's due process rights violated when the district court granted the State's motion to amend the complaint while denying Bischoff's request for a bill of particulars? No.

Accordingly, the judgment of the district court is affirmed.

## FACTS

On May 1, 2002, Mary Frayser was driving a Honda Accord south on Interstate 135 from her home in Salina, Kansas, to Bethany College in Lindsborg, Kansas, where she was a student. The interstate there was under construction, requiring the northbound and southbound traffic to travel on the same side of the interstate, separated only by orange cones. Construction started approximately 8 miles north of the Lindsborg exit and continued past Lindsborg.

About the time Frayser reached the construction zone, she saw a semi-trailer traveling closely behind her. The semi's driver, later identified as Daryl Bischoff, began flashing the truck's headlights and honking the horn. According to Frayser, the semi continually slowed down and then sped up to the rear of her car during the 8 miles that she traveled south in the construction zone. She stated that she was traveling approximately 60 miles per hour, the posted speed limit in the construction zone.

When Frayser reached the Lindsborg exit, she signaled and drove onto the exit lane. As she exited, Bischoff drove around her car, nearly hitting it. Frayser applied the brakes quickly to avoid hitting the semi. At the end of the exit ramp, Bischoff stopped abruptly, causing Frayser to again slam on her brakes.

After stopping his semi, Bischoff got out and approached Frayser's car, who then locked her doors. She heard Bischoff pull on the door handle while he yelled obscenities at her and hit her car window. Bischoff yelled: "You know what a F'n truck like that can

do to a F'n car like this?"; "Can't you go the F'n speed limit?"; and "Get out of the F'n car, I'm going to kill you."

While Bischoff was standing at Frayser's car window, a construction truck entered the shoulder of the exit ramp. In order to get the attention of the construction truck, Frayser began honking her horn. Bischoff then walked back to his semi, made a U-turn, and drove back onto the interstate. As he drove away, Bischoff made an obscene hand gesture and yelled at Frayser.

Don Pennington, Sr., a truck driver for CHS Transportation, was traveling directly behind Bischoff through the construction zone. He witnessed the altercation between Frayser and Bischoff, and generally corroborated Frayser's version of the events. Pennington saw Bischoff's brake lights illuminate several times, and he acknowledged that the vehicles' speeds varied throughout the construction zone by approximately 5 miles per hour. Pennington also testified that Bischoff complained over a CB radio that Frayser was varying her speed in the construction zone.

Based on the events of May 1, 2002, Bischoff was located and charged in the Saline County District Court with one count of criminal threat, in violation of K.S.A. 21-3419, a severity level 9 felony; one count of reckless driving, in violation of K.S.A. 8-1566, an unclassified misdemeanor; and one count of following too closely, in violation of K.S.A. 8-1523, a traffic infraction.

On May 17, 2002, a preliminary hearing on the felony charge of criminal threat was held. At the conclusion of the hearing, the court found probable cause existed and determined Bischoff should be bound over for formal arraignment on June 3.

Thirteen days later, on May 30, 2002, the State filed a motion to amend the complaint to add the felony charge of aggravated assault, in violation of K.S.A. 21-3410(a). The motion stated in relevant part:

"2. The evidence presented at the preliminary hearing provided probable cause to believe that the defendant placed the victim, Mary Frayser, in reasonable apprehension of immediate bodily harm with a deadly weapon, to wit: a semi truck.

"3. Defense counsel had full opportunity to cross-examine the State's witnesses at the preliminary hearing and the defendant has not yet been arraigned in this

case, so the defendant's ability to defend himself against this additional charge would not be prejudiced in any way."

After a hearing and arraignment on June 3, 2002, the court granted the motion, and the amended complaint was filed the next day. The two lesser charges, reckless driving and following too closely, were dropped. One charge of aggravated assault was added to the charge of criminal threat; count two essentially alleged that Bischoff had intentionally placed Frayser in reasonable apprehension of immediate bodily harm through use of his semi, a deadly weapon.

On July 23, 2002, Bischoff filed a motion to dismiss, or in the alternative, for a bill of particulars. He argued that the State had not provided facts to support the aggravated assault charge at the preliminary hearing. In addition, he asserted that he needed a bill of particulars for this additional charge in order to prepare for trial. On August 19, after a hearing the court denied Bischoff's motion to dismiss, as evidenced by the following colloquy:

"THE COURT: Motion is denied. *The evidence presented at the preliminary hearing would be sufficient for the bindover on the charges on which the defendant was bound over and would provide the information that would be required by a Bill of Particulars.*

"MS. McKENNA [defense counsel]: So the request for Bill of Particulars is denied as well?

"THE COURT: The State presented their evidence at the preliminary hearing.

"MS. McKENNA: So I'm clear, Judge, then that will be the testimony that the State will be relying upon for the Aggravated Assault charge as well? I mean, in other words I'm not going to come to Court and be surprised by any other evidence?

"THE COURT: I don't know what the evidence would be. . . . [T]he question is whether there was sufficient evidence presented at the preliminary hearing to bind the defendant over on *that* charge, and it's my ruling that there was. You'll be entitled to discovery of any statements or any witnesses that the defendant— that the State intends to produce." (Emphasis added.)

Eight months later, on April 29, 2003, the jury trial commenced. Prior to closing argument, Bischoff requested a unanimity instruction which the district court denied, stating:

"THE COURT: When factual circumstances of a crime involve a short or continuous incident comprised of several acts individually sufficient for conviction,

jury unanimity requires only that the jury agree to an act of the crime charged, not each particular act. . . . The Court would find that this is not a multiple acts case, that the evidence is clear it was either a continuous—one continuous action consisting of a series of continuing acts . . . . Your request will be noted for the record."

During closing argument, the State argued that Bischoff was guilty of aggravated assault because his intentional actions placed Frayser in reasonable apprehension of immediate bodily harm not only while on the interstate, but also through his cutting off her car on the ramp:

"His actions the entire time that they were in the construction zone were very deliberate, from honking his horn and flashing his lights to driving up so close behind her that the only thing Mary could see were his headlights. *But particularly* his action when she went to exit at Lindsborg, his action in passing her and then immediately cutting right in front of her." (Emphasis added.)

After the jury found Bischoff guilty of both counts, the Court of Appeals affirmed the criminal threat conviction, but reversed and remanded the aggravated assault conviction because it held that Bischoff's act of following Frayser onto the Lindsborg exit ramp was a separate and distinct act from his actions while on the interstate. *Bischoff*, slip op. at 12-13. Accordingly, the court held that the district court erred in refusing to give a unanimity instruction. It further held that the absence of another preliminary hearing and a bill of particulars exacerbated the error. Therefore, the court concluded that the error was not harmless. *Bischoff*, slip op. at 13.

## ANALYSIS

Issue 1: *Did the district court err in failing to give a unanimity jury instruction on the aggravated assault charge?*

The State argues that the district court properly denied Bischoff's request for a unanimity instruction because the aggravated assault charge was not supported by separate, distinct acts but was one continuous act. Hence, this was not a multiple acts case requiring jury unanimity. Bischoff argues the Court of Appeals correctly found two acts: one on the interstate, the other on the exit ramp.

We recently acknowledged some preliminary considerations regarding possible multiple acts in *State v. Kesselring*, 279 Kan. 671, 682, 112 P.3d 175 (2005):

" 'In a multiple acts case, several acts are alleged and any one of them could constitute the crime charged. . . . [Citations omitted.] Whether a case is a multiple acts case is a question of law over which this court has unlimited review. [Citation omitted.] *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003). The threshold question in a multiple acts analysis is whether the defendant's conduct is part of one act or represents multiple acts which are *separate and distinct* from each other.' [Citation omitted.]"

We went on to explain that an appropriate test for determining the threshold question of whether multiple acts are involved is: "Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motivated by a 'fresh impulse.' " 279 Kan. at 683 (quoting *State v. Hill*, 271 Kan. 929, 939, 26 P.3d 1267 [2001]).

If a case involves multiple acts, the jury must be unanimous as to which act or acts constitute the crime. To ensure jury unanimity in multiple acts cases, we require that the State elect the particular act upon which it will rely for conviction. Or, as was requested here and rejected, that the trial court instruct the jury that all of the jurors must agree that the same underlying criminal act has been proved without a reasonable doubt. *State v. Smith*, 268 Kan. 222, 230, 993 P.2d 1213 (1999).

The Court of Appeals ruled that the district court erred in denying the unanimity instruction because multiple acts supported the aggravated assault charge.

"We find Bischoff's acts on the interstate to be akin to the single fight in [*State v. Staggs*, 27 Kan. App. 2d 865, 9 P.3d 601, *rev. denied* 270 Kan. 903 (2000)]. The horn honking, lights flashing, and repeated instances of driving close to the rear of Frayser's Honda over an 8-mile stretch were part of a continuous, single incident. However, when Bischoff decided to detour from his planned route in order to follow Frayser onto the Lindsborg exit ramp in order to stop and confront her, that act was more akin to Hill's act of following the victim into another room, which the *Hill* court [*State v. Hill*, 271 Kan. 929, 26 P.3d 1267 (2001)] found to be a separate act." *Bischoff*, slip op. at 12-13.

Based upon several grounds, we agree with the district court that we are faced with a single, continuous incident in the instant case.

In *Staggs*, the defendant was convicted of aggravated battery. Staggs argued that the district court should have given a unanimity instruction, because the jury could have relied on either his kick or his punch of his victim during a fight as the basis for his conviction. The Court of Appeals ruled that both the kick and the punch were not distinct and separate acts in and of themselves requiring a unanimity instruction:

"[T]he evidence here supports only a brief time frame in which the aggravated battery occurred. *Once defendant initiated the altercation, no break in the action of any length occurred,* and the confrontation continued until defendant broke the victim's cheekbone. Simply put, the evidence established a continuous incident that simply cannot be factually separated. No 'multiple acts' instruction was necessary." (Emphasis added.) 27 Kan. App. 2d at 868.

Although the fight in *Staggs* only lasted for a brief period, a longer period of time can also constitute a single act. In *State v. Kesselring*, 279 Kan. 671, the defendant was convicted of, among other things, aggravated kidnapping. On appeal, he argued that the district court should have given a unanimity instruction because the kidnapping could have occurred

" 'either when the victim went out onto the porch when Callarman [a co-conspirator] knocked, when the victim was taken to the car, when the victim was returned to the car by Holmes [a coconspirator] at gunpoint after leaving the car, after the stop at the house when the victim appeared not to be distressed, or when the victim was removed from the car later.' " 279 Kan. at 682.

Using a "parallel analysis" to that in *Staggs*, this court rejected Kesselring's argument, stating:

"The evidence establishes a continuous incident that cannot be factually separated. . . .

"In this case, although the events transpired over a longer period of time [than *Staggs*], there were no breaks in the sequence of events sufficient to establish separate criminal acts. The crime of kidnapping, as compared to the crime of battery involved in *Staggs*, may occur over a longer period of time. Yet a kidnapping over several hours or days could not be broken into several crimes. Under the facts of this case, the length of time involved does not prevent a finding of a continuous incident. Furthermore, the moving of a kidnapping victim from one location to a car and from the car to another location does not constitute separate acts." 279 Kan. at 683.

*Kesselring* is analogous to the instant case. Like the crime of kidnapping, the crime of aggravated assault, in the form of "road rage," may occur over a longer period of time. Although the events at issue transpired for perhaps 8 minutes over approximately 8 miles, once Bischoff "initiated the altercation" (see *Staggs*, 27 Kan. App. 2d 868), there were no breaks in the sequence of events sufficient to establish separate criminal acts. The incidents on the interstate and on the exit ramp prior to Bischoff leaving his semi were a continuous incident; as road rage, Bischoff's exit ramp conduct in his semi was not motivated by a fresh impulse.

Indeed, the Court of. Appeals has found a continuous incident involving several actions occurring over a period of 30 minutes. In *State v. Hilson*, 28 Kan. App. 2d 740, 20 P.2d 94 (2001), within a 30-minute time frame, the defendant committed two acts: he threatened to have T.L. (his friend) shoot the victim and threatened to have T.L. hit her. The court held that both actions had the same objective—to coerce the victim to go with the defendant to Wichita. Despite this extended time period, the Court of Appeals concluded, "The conduct in question does not constitute multiple acts." 28 Kan. App. 2d at 743.

Most recently in *State v. Vann*, 280 Kan. 782, 796-99, 127 P.3d 307 (2006), we distinguished *State v. Hill*—relied upon by the Court of Appeals in the instant case—as we rejected the argument that multiple acts existed. The defendant in *Vann* was charged with attempted murder after firing several shots in a store. We held that "the defendant's actions in shooting the first shot and pumping the shotgun to reload are part of a continuous incident that occurred *within only a couple of minutes*. They were both performed with the express design announced by the defendant to kill everyone in the party shop." (Emphasis added.) 280 Kan. at 798-99.

In short, we conclude that, as in these cases cited, Bischoff had a design or objective. He acted to express his extreme displeasure with Frayser's driving, and it soon escalated into road rage lasting several minutes.

Our conclusion is also supported, in some measure, by Bischoff's counsel at oral arguments. There, she stated that if the prosecutor had charged two counts of aggravated assault, *i.e.*, one for Bis-

choff's conduct on the interstate and the other after he followed Frayser onto the exit ramp, she would have argued multiplicity. Multiplicity is the charging of two or more counts in a complaint where only a single wrongful act is involved. *State v. Patten,* 280 Kan. 385, Syl. ¶ 2, 122 P.3d 150 (2005). As a result, if one argues multiple acts, as Bischoff does here, then it has been conceded there are separate offenses present, and one can hardly also argue multiplicity. *State v. Vann,* 280 Kan. at 798-99 (defendant could not be charged with two counts of attempted murder of one person based on his actions in firing the first shot and reloading the shotgun); *State v. Kesselring,* 279 Kan. at 683 ("If the State had charged Kesselring with separate counts of kidnapping based on each act that Kesselring attempts to separate, the issue of multiplicity could have been justly raised. The incident here was not susceptible to dissection into further components that would constitute multiple acts. . . ."); *State v. Fulton,* 28 Kan. App. 2d 815, 23 P.3d 167, *rev. denied* 271 Kan. 1039 (2001) (one continuous incident rather than multiple acts where defendant was cut on face and then on chest because it would have been multiplicitous to charge each cutting separately).

In short, "this was not a multiple acts case and no multiple acts instruction was necessary to ensure that the jury's verdict was unanimous." *Kesselring,* 279 Kan. at 683. The district court did not err.

**Issue 2:** *Were Bischoff's due process rights violated when the district court granted the State's motion to amend the complaint while denying Bischoff's request for a bill of particulars?*

Next, the State argues that Bischoff was not prejudiced when the district court allowed the complaint to be amended to include a charge of aggravated assault after the preliminary hearing without requiring a bill of particulars. Bischoff responds that he was prejudiced by the district court's action.

The Court of Appeals stated:

"[W]e perceive that the amendment in this case prejudiced the defendant in preparing his defense. Without a preliminary hearing on the aggravated assault, the defense was not able to pin down the point at which Frayser transitioned from being nervous about 'some jerk in a hurry' who was closely following her to being

apprehensive about immediate bodily harm. Further, Bischoff had to speculate as to which of his acts the prosecution would argue constituted aggravated assault. The uncertainty was exacerbated by the district court's denial of a bill of particulars, as well as the refusal to give a unanimity instruction." Slip op. at 21-22.

At the outset, we observe that part of the Court of Appeals' rationale stated above has been necessarily eliminated by our holding on issue one. In other words, there is no uncertainty to be exacerbated because this is not a multiple acts case. What remains is subject to our examination for prejudice to Bischoff: allowing amendment of the complaint without a second, preceding preliminary hearing and with no later bill of particulars.

We begin by examining K.S.A. 2004 Supp. 22-3201(e), which provides for the amendment of a complaint: "The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced."

In interpreting this statute, this court has held that even the charging of a different crime may be allowed by an amendment to a complaint before trial, provided the substantial rights of the defendant are not prejudiced. *State v. Woods*, 250 Kan. 109, Syl. ¶ 1, 825 P.2d 514 (1992); *State v. Niblock*, 230 Kan. 156, 163, 631 P.2d 661 (1981). Whether to allow the amendment is subject to the district court's discretion. *Woods*, 250 Kan. 109, Syl. ¶ 1. This court consistently has given the State considerable latitude in amending a complaint prior to trial. 250 Kan. at 114. Discretion is abused only when no reasonable person would take the view adopted by the district court. The defendant bears the burden of establishing such an abuse of discretion. *State v. Sanchez-Cazares*, 276 Kan. 451, 454, 78 P.3d 55 (2003).

Next, we examine the failure to provide a second preliminary hearing—on the amended charge of aggravated assault—before the court bound Bischoff over for trial. *State v. Pioletti*, 246 Kan. 49, 785 P.2d 963 (1990), generally addresses this issue. There, the defendant was charged with premeditated first-degree murder. After a preliminary hearing, he was bound over on the murder charge and the charge of aggravated kidnapping, and the information was later amended to add the new charge. He was not afforded a sec-

ond preliminary hearing. After his motion to dismiss the new charge was denied, he appealed. He contended that the trial judge exceeded his judicial power in binding him over on a charge of aggravated kidnapping where he had not been *charged* with that crime.

During the course of analysis, this court, although acknowledging that the then current version of the statute on preliminary hearings (K.S.A. 22-2902 [Ensley 1988]) was somewhat different from its predecessors, nevertheless affirmed years of case law. This court stated: "Kansas has long held that a defendant may be charged with one offense and 'bound over for another, if it shall appear on the [preliminary] examination that he is guilty of a public offense other than that charged in the warrant.' " 246 Kan. at 60 (quoting *Redmond v. State*, 12 Kan. 172, Syl. ¶ 3, [1873]).

This court then rejected Pioletti's argument with the following rationale:

"Common sense dictates that, had the legislature intended to restrict a magistrate's power to consideration of only a charged felony, it could easily have done so. . . . Defendant's position would often result in multiple preliminary hearings *on the same set of facts*. The process could continue until the magistrate agreed the State had finally charged the appropriate felony." (Emphasis added.) 246 Kan. at 61.

Pioletti also argued a related issue: that he was denied his right of cross-examination of the witness at the preliminary hearing "as he did not anticipate a possible aggravated kidnapping charge." 246 Kan. at 61. We held that there was no showing he was precluded or restricted in any way in his cross-examination. We stated, "We have, in essence, disposed of this issue by our previous holding that the magistrate had the power to bind defendant over on the aggravated kidnapping charge." 246 Kan. at 61.

Bischoff cannot show that his substantial rights were prejudiced as a result of the amendment. First, he made no showing of prejudice at the hearing on his motion to dismiss or for a bill of particulars. Even in his brief before the Court of Appeals, Bischoff did not argue specifically the prejudice incurred. Second, the complaint was amended 10 months prior to trial, and the motion to dismiss was argued 8 months prior to trial, giving him ample op-

portunity to prepare. Third, as the State argued in support of its amendment, the charge of aggravated assault was added based upon testimony provided at the preliminary hearing, and his defense counsel had full opportunity to cross-examine the State's witnesses there; the State relied on the same evidence at both the preliminary hearing and at trial. Fourth, Bischoff was well aware of all of the evidence prior to trial, and he chose as his primary defense the claim that he did not intentionally commit any of the acts alleged. See *State v. Smith*, 225 Kan. 796, 799, 594 P.2d 218 (1979) (defense of lack of specific intent was available to defendant on both types of first-degree murder charged, premeditated and felony-based, thus lack of new preliminary hearing on amended information caused no substantial prejudice). Fifth, Bischoff's counsel admitted at oral arguments before this court that she knew that the evidence supporting the criminal threat charge were the words Bischoff uttered outside of Frayser's car window on the ramp. By exclusion, the remaining evidence could be used to support the charge of aggravated assault. Accordingly, the district court did not abuse its discretion in allowing the State to amend the complaint.

Nevertheless, Bischoff argued to the Court of Appeals that the district court should have required the State to file a bill of particulars under K.S.A. 2001 Supp. 22-3201 designating the factual basis for the aggravated assault charge. A bill of particulars serves to inform the defendant of the nature of the charges and the evidence against him or her, enabling the defendant to prepare a defense, and to prevent further prosecution for the same offense. *State v. Myatt*, 237 Kan. 17, 29, 697 P.2d 836 (1995).

K.S.A. 2001 Supp. 22-3201(f) concerns the bill of particulars and provides:

"When a complaint, information or indictment charges a crime but fails to specify the particulars of the crime sufficiently to enable the defendant to prepare a defense the court *may*, on written motion of the defendant, require the prosecuting attorney to furnish the defendant with a bill of particulars. At the trial the state's evidence shall be confined to the particulars of the bill." (Emphasis added.)

The decision to require the prosecution to file a bill of particulars is generally discretionary with the district court, except in such

cases where the charging instrument itself is insufficient to inform the accused of the charges against which he or she must defend. *State v. Webber*, 260 Kan. 263, 284, 918 P.2d 609 (1996), *cert. denied* 519 U.S. 1090 (1997). Accordingly, our review is for abuse of that discretion. As mentioned, Bischoff bears the burden of establishing such abuse. There is no abuse of discretion in denying the bill of particulars where the record is clear the defendant was not misled. *State v. Kee,* 238 Kan. 342, 354, 711 P.2d 746 (1985).

The district court stated, "The evidence presented at the preliminary hearing would be sufficient for the bindover on the charges on which the defendant was bound over, and would provide the information that would be required by a Bill of Particulars." We agree. For the same reasons we provided in concluding that Bischoff had shown no prejudice to his substantial rights when the complaint was amended without benefit of a preliminary hearing on the charge of aggravated assault, we also conclude under the facts of this case that he has shown no prejudice to his substantial rights when he was provided no bill of particulars on that same charge. As a result, we hold the district court did not abuse its discretion in allowing the amendment of the complaint and in rejecting the motion for a bill of particulars.

The Court of Appeals is reversed, and the district court is affirmed.