NOT DESIGNATED FOR PUBLICATION

No. 123,232

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

CHRISTOPHER DERRITT,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT A. MARTINEZ, judge. Opinion filed February 4, 2022. Affirmed.

*Suzanne Valdez*, special prosecutor, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before CLINE, P.J., GREEN, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: In this appeal, the State challenges the district court's ruling on the motion of Christopher P. Derritt for immunity under K.S.A. 2020 Supp. 21-5231 to the charge of aggravated battery. The charge related to events that occurred on the night of June 18, 2018, and the early morning hours thereafter. The hearing on Derritt's motion for immunity and the preliminary hearing for the case were combined. The district court heard the testimony of Derritt, Ezra Brooks, Jaron McNeal, and Detective Stuart Littlefield at these proceedings. The parties are well acquainted with the many details these witnesses testified to which led to the State's aggravated battery charge against Derritt. We need not recount them here in detail. The following will suffice.

1

Derritt had given McNeal a ride to the home of Ezra Brooks where Derritt, McNeal, and Brooks spent the evening talking, smoking marijuana, and watching YouTube videos. At the end of the evening Derritt and McNeal left Brooks' home. They were headed for the apartment of McNeal's girlfriend where Derritt had originally picked up McNeal. On the way to the girlfriend's house, an altercation ensued which resulted in Derritt being shot in the thigh and McNeal being shot in the chest, neck, and shoulder. McNeal survived his wounds.

The State contended that Derritt took McNeal at gunpoint from Brooks' house and ordered him to drive Derritt's car to McNeal's girlfriend's apartment. Along the way, Derritt instructed McNeal to pull over. McNeal feared that Derritt was going to shoot him, so McNeal accelerated the car and crashed into a light pole. As this was happening, Derritt shot McNeal multiple times and in the process accidentally shot himself in the thigh.

Derritt, on the other hand, testified that he was initially driving as they left Brooks' house and headed for McNeal's girlfriend's apartment. Along the way they made a couple of stops. At that point, Derritt told McNeal he was tired and asked McNeal to drive the rest of the way. McNeal agreed and took the wheel. Shortly before reaching the girlfriend's apartment, McNeal stopped the car; pointed a gun Derritt; and demanded that Derritt turn over his phone, money, and diamond earrings. Derritt then grabbed the gun McNeal was holding. The gun discharged, wounding Derritt in the thigh. The struggle continued and there were four more shots that struck McNeal. While this was going on, the car rolled forward and struck the light pole.

After the conclusion of the combined hearings, the district court granted Derritt's motion for immunity from prosecution based on its conclusion that the State had not met

its burden of proving probable cause to prosecute this action given the credible evidence presented at the hearing. The district court dismissed the case, and the State appealed.

On appeal, the State contends that the district court erred in granting Derritt immunity under K.S.A. 2020 Supp. 21-5231 and dismissing the case against him. The immunity statute states:

> "(a) A person who uses force which, subject to the provisions of K.S.A. 2020 Supp. 21-5226, and amendments thereto, is justified pursuant to K.S.A. 2020 Supp. 21-5222, 21-5223 or 21-5225, and amendments thereto, is immune from criminal prosecution and civil action for the use of such force, unless the person against whom force was used is a law enforcement officer who was acting in the performance of such officer's official duties and the officer identified the officer's self in accordance with any applicable law or the person using force knew or reasonably should have known that the person was a law enforcement officer. As used in this subsection, 'criminal prosecution' includes arrest, detention in custody and charging or prosecution of the defendant.
>
> . . . .
>
> "(c) A prosecutor may commence a criminal prosecution upon a determination of probable cause." K.S.A. 2020 Supp. 21-5231.

In reviewing the district court's ruling on Derritt's motion for immunity under K.S.A. 2020 Supp. 21-5231, we apply a bifurcated standard of review of the district court's probable cause determination. First, when the district court's factual findings arise out of disputed evidence, we must determine whether the findings are supported by substantial competent evidence. In doing so, we do not reweigh the testimony of the witnesses to resolve conflicts in the testimony. That was the province of the district court judge who was able to observe the manner and demeanor of the witnesses as part of the court's credibility determinations. We, on the other hand, when faced with conflicts in the testimony, have nothing before us other than the cold record of the proceedings. Second, the ultimate legal conclusion as to whether the facts so found rise to the level of probable

cause to support the State's prosecution is a legal conclusion which we review de novo. See *State v. Hardy*, 305 Kan. 1001, 1012, 390 P.3d 30 (2017).

The State's initial contention is that the district court erred because it failed to follow the correct procedure when considering Derritt's motion. Citing *State v. Stephens*, 263 Kan. 658, 953 P.2d 1373 (1998), the State argues the district court should have first decided whether probable cause existed to believe Derritt committed the crimes as alleged based on an evaluation of the evidence in the light favoring the State. Then, the district court should have applied the standard in *Hardy* to determine whether the State carried its burden to establish probable cause without considering the evidence in the light favoring the State.

The State argues from an analogy drawn in *Hardy* that when the court determines whether the State has carried its burden to establish probable cause that a defendant's use of force was not statutorily justified, that determination "is akin to the warrant process with the low probability cause threshold requirement."

The *Hardy* court, after drawing an analogy to the warrant process in which a neutral and detached magistrate performs a "warrant-like gatekeeping function," stated that in hearing a motion for immunity the district court must consider the totality of the circumstances without deference to the State to determine if the State has met its burden of proof. 305 Kan. at 1011. In doing so, the district court must hear and resolve conflicts in the evidence at the hearing. Moreover, in the exercise of its discretion, the district court can schedule the hearing on an immunity motion either before, after, or concurrent with a preliminary hearing, keeping in mind that a defendant's immunity motion "ought to be settled as early in the process as possible to fully vindicate the statutory guarantee." 305 Kan. at 1012.

4

It is unclear exactly what the State is claiming to be the procedural defect here. It certainly cannot be the timing of the hearing or combining the two hearings into one because the district court, in its discretion, can schedule the hearing before, after, or concurrent with the preliminary hearing. In its ruling on Derritt's motion—which could have occurred even before a preliminary hearing on the case—the court necessarily found that there was not probable cause to prosecute Derritt because of the State's failure to overcome his claim of immunity.

What is clear to us is that the district court followed the procedure described in *Hardy* in resolving Derritt's motion for immunity and, in so doing, disposed of the ultimate issue in a preliminary hearing: whether the State's evidence is sufficient to warrant prosecution.

Having heard the testimony at the consolidated preliminary hearing and the hearing on Derritt's motion, the court identified the undisputed facts; resolved the factual conflicts in the evidence; determined that, considering the totality of the circumstances, the State had not met its burden under K.S.A. 2020 Supp. 21-5231; granted the immunity motion; and dismissed the case because the immunity granted to Derritt precluded the State's prosecution.

The State next contends that it presented sufficient evidence to establish probable cause to prosecute Derritt and to overcome his motion for immunity. This is based on the State's analysis of the testimony which, it claims, establishes that

> "Derritt was not provoked, that he was the initial aggressor when he took the gun from Brooks' lap, that he used the gun to inflict terror on McNeal and Brooks, that he kidnapped McNeal and forced him to drive his car with a gun to McNeal, and that he fired the gun and shot McNeal multiple times."

5

Based on this assessment of the evidence, the State contends that Derritt was ineligible for immunity because of the provision of K.S.A. 2020 Supp. 21-5226 relating to defendants who initially provoke the use of force and the fact that the shooting here occurred while Derritt was attempting to kidnap McNeal. The State's recounting of the facts is based on McNeal's narrative of what provoked the shooting. The State ignores Derritt's contrary testimony which, as we shall see, the district court found credible.

Here, the district court first separated the testimony presented at the hearing into disputed and undisputed evidence. The court found the following was undisputed:

> "[T]he defendant picked up the alleged victim, Jaron McNeal, from his residence and the two drove around for sometime. During the course of the evening, the defendant purchased and smoked marijuana—the defendant and McNeal purchased and smoked marijuana as they drove around. The defendant and McNeal also made several stops at local convenient stores where defendant purchased different items, including marijuana paraphernalia and a laser. The alleged victim and defendant also visited the home of a mutual friend Mr. Ezra Brooks.

> "Sometime during the evening, a gun entered the picture and a conflict arose between the defendant and McNeal. We also know that after leaving Mr. Brooks's residence, Mr. McNeal drove the defendant's car at defendant's request or through armed demand. It is also not disputed after their visit to Ezra Brooks's residence, a violent struggle occurred resulting in both the defendant and the victim being shot with a gun inside defendant's car.

> "The wounds suffered by Mr. McNeal resulted in paralysis. It is also undisputed that defendant's car crashed into a utility pole on the way back to McNeal's residence. It is also undisputed that Mr. McNeal, the alleged victim, has three prior charges of robbery. Finally, it is undisputed that defendant is the person who called the police for help. Those are the factors the parties either agreed upon or were undisputed."

6

The district court then discussed the conflicting testimony presented by all three participants that evening, as well as the testimony of Detective Littlefield. The participants that evening did not agree on when the gun first appeared, who owned the gun, whether Derritt left Brooks' residence before returning, what Brooks did when Derritt allegedly left the first time, whether Derritt forced McNeal out of Brooks' residence at gunpoint and made him drive the vehicle, what occurred in the vehicle after McNeal and Derritt left Brooks' residence, and whether the marijuana had been spiked with another substance.

To resolve the conflicting testimony, the district court weighed the credibility of the witnesses and determined Derritt's testimony to be the most credible. With respect to Brooks, the court observed:

> "He first testified he had not spoken with Mr. McNeal about what happened. Then later he changed his mind and he recanted. He testified no drugs were used at his home that night even though defendant and Mr. McNeal both admitted that there had been drug use there. He stated there had been no gun present during the visit, yet the State's other witness, Mr. McNeal, says there was. In fact, the other witness for the State, Mr. McNeal, testified the gun was in Mr. Brooks's possession when they arrived at the residence of Mr. Brooks and Mr. Brooks said it was his gun. . . . Mr. Brooks even admitted that he and Mr. McNeal had talked about what happened that night and Mr. McNeal had told him what happened."

Turning to McNeal, the court did not believe McNeal's testimony that the $600 in his possession was for the acquisition of a Mustang automobile in the middle of the night from its unnamed owner. Nor did the court believe McNeal's testimony about Derritt calling McNeal's girlfriend to tell her they were on their way while he held McNeal at gunpoint. The court also found unbelievable McNeal's testimony regarding a discussion about Derritt's father accusing Derritt of being a pedophile. The court did not believe McNeal's testimony about telling Detective Littlefield about Derritt's gun in the glovebox

of the car. Finally, "the Court does not believe Mr. McNeal was taken at gunpoint and forced to drive after leaving Mr. Brooks's residence. Court just does not believe there was enough evidence to support the story of Mr. McNeal."

The district court also found the testimony of Detective Littlefield had little credibility because Littlefield only recounted the information McNeal told him during the interview in the hospital without interviewing Brooks and Brooks' sister after learning the men spent time at Brooks' residence that night.

The district court noted the State's failure to offer medical or phone records to support McNeal's version of the events. There was no evidence that McNeal was shot first. Nor did McNeal's testimony explain how the right-handed Derritt, sitting in the passenger seat with the gun pointed at McNeal, could have been shot in the outer left thigh if he had, in fact, been holding the gun. The court was convinced that Derritt was shot first.

To the contrary, the district court concluded Derritt's "testimony was both believable and reasonable in explanation. The defendant's story in view of the totality of the evidence presented just made the most sense." The court noted that Derritt presented photographs and the Snapchat video to corroborate his testimony, while the State only presented the testimony of its witnesses. The court found that Derritt "gave the most unwavering and non-hesitant testimony about what happened that night . . . during both his direct and cross-examination." Thus, the district court concluded Derritt did not force McNeal to drive his vehicle at gunpoint. Instead, the district court concluded McNeal stopped the car in order to rob Derritt with a gun. "The Court believes it was the defendant who was under attack in his own car and it was necessary that defendant defend himself against the unlawful force of Mr. McNeal, who was armed with a gun."

8

It is clear that the district court did not believe that Derritt initially provoked the use of force. Nor did the district court believe that the shooting here occurred while Derritt was attempting to kidnap McNeal. Based on the credible evidence presented, the district court concluded the State failed to meet its burden to establish probable cause and dismissed the case against Derritt.

The State's argument on appeal is predicated on events that the district court found did not occur. The district court's ruling was based on Derritt's contrary testimony. "When the lower court ruling entails factual findings arising out of disputed evidence, a reviewing court will not reweigh the evidence and will review those factual findings for 'supporting substantial competent evidence' only." *Hardy*, 305 Kan. at 1012. Viewing the evidence in the light favoring Derritt, the prevailing party below, and without redetermining the credibility of the witnesses, we find substantial evidence to support the district court's ruling. See *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). We find no error in the district court rejecting the State's theory and granting Derritt's motion.

The State mentions in passing, without any supporting authority, that the district court improperly considered the photos admitted during the hearing. Points raised incidentally in a brief and not argued are deemed abandoned. *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018). This issue has been abandoned and we need not consider it.

We find no error in the district court's procedure in handling Derritt's motion and in its findings and conclusion following the evidentiary hearing that the State failed to meet its burden to establish probable cause that Derritt's use of force was not justified. Accordingly, we affirm the district court's conclusion that Derritt is entitled to statutory immunity from prosecution.

Affirmed.

9